[Crim. No. 18.    Fifth Dist.    Apr. 22, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH LEONARD PILGRIM, Defendant and Appellant.

Ralph Leonard Pilgrim, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assist-

ant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Ralph Leonard Pilgrim, was charged with a violation of section 288 of the Penal Code; it was alleged that he ". . . did wilfully, unlawfully, feloniously and lewdly commit a lewd and lascivious act upon and with the body, members and private parts thereof of Margaret Ann Pilgrim, who was then and there a child under the age of fourteen years, to wit, of the age of six years, . . ." He was represented at the trial by the public defender's office; after the jury brought in a guilty verdict, he was found not to be a sexual psychopath, probation was denied, and he was sentenced to state's prison.

The defendant makes two points on the appeal. First, he contends that he was denied due process of law and equal protection of the laws through the ineptness of his counsel in presenting a defense, and second, he urges that the evidence is not sufficient to support a conviction. We shall examine these contentions in reverse order, looking first to the evidence of guilt.

█ The evidence is amply sufficient to warrant the conviction. Ralph Leonard Pilgrim is the older brother of Mrs. Pearl Marie Pilgrim's husband and is the uncle of Margaret Ann Pilgrim, aged six. Appellant had resided with the Pilgrim family on two occasions, each of approximately three weeks' duration, between the time of his release from prison in October 1959 and the incident of January 17, 1961. On January 17, 1961, appellant visited the Pilgrims' home in Modesto. Margaret arrived from school at about 2:45 p.m. and lay down to nap at approximately 3 or 3:15 p.m. attired only in panties and a T-shirt. Appellant, having drunk a half pint of intoxicating liquor, was lying on a couch in the living room. While Mrs. Pilgrim was talking in the kitchen to a neighbor woman, appellant left the couch and entered the bedroom in which Margaret was sleeping. He placed a chair against the door to prevent it from being opened easily, and getting under the single cover which was draped over Margaret, slid her panties half way down, unzipped his pants and placed his penis between her legs, saying, "This won't hurt," and threatened to hit her should she cry. Mrs. Pilgrim attempted to open the door. Appellant told Margaret to take the chair away, which she did; her mother testified that Margaret was tearful and looked disheveled. When Mrs. Pilgrim asked Margaret why she was crying, appellant, lying

on the bed, answered that he had been teasing her. Mrs. Pilgrim asked the defendant to come to the kitchen, and she left the room. Margaret testified that appellant again blocked the door with a chair and renewed his familiarities with her. Mrs. Pilgrim returned, found the door blocked, and pounded upon it until the victim opened it; she testified that her daughter then presented an even more tearful expression. This time Mrs. Pilgrim took Margaret from the room; appellant later removed himself from the bed and joined Mrs. Pilgrim and her friend, Mrs. Savanah, in conversation in another part of the house. The uncle ate supper with the family.

During the child's evening bath, Margaret's behavior led the mother to chastise her for her actions in the tub and to threaten her with a spanking if she did not indicate who had told her such activity "was fun." Margaret revealed the facts of the prior incident to her mother. After consulting with her neighbor, Mr. Veach, Mrs. Pilgrim contacted authorities. At the trial the victim testified that on two prior occasions appellant had indulged in intimate relations with her body, including an act of oral copulation.

The defendant testified that he was at the Pilgrim home on January 17, 1961; he moved from the front room couch into the bedroom where Margaret was resting and lay down upon the bed; he blocked the door with a chair to keep Joyce Savanah's children from disturbing him, and he was lying on the bed when Mrs. Pilgrim knocked on the door; Margaret opened the door by moving the chair. He said Mrs. Pilgrim wanted to talk with him, but he didn't wish to do so; he surmised that the chair must have slid back into place after the door was closed by Mrs. Pilgrim. Appellant testified that the second time Mrs. Pilgrim knocked he answered the door after removing the chair; Margaret remained on the bed, and he joined the ladies. Appellant contended that he never molested. Margaret, and that the testimony given by her and her mother was motivated by Mrs. Pilgrim's attachment for him and her desire for revenge because he resisted her amorous advances. Two witnesses, Lucille Dunagan and Virginia Barnett, testified in attempted support of the theory of Mrs. Pilgrim's amorous attachment to appellant and attacked Margaret Pilgrim's veracity.

Appellant urges that the evidence presented against him was insufficient because it was contrived, perjured and contradictory. ■ He also refers to testimony introduced at the

preliminary hearing, which was not before the trial court and is not part of the record; consequently, that testimony cannot be considered upon appeal. (*People* v. *Dunlop*, 102 Cal.App.2d 314 [227 P.2d 281].)

Respondent contends that the trial court improperly supervised the establishment of Margaret's competency to testify; the point is without merit. Margaret said that she was going to tell the truth in court and that she knew what the truth was. Appellant argues that the child was intimidated into lying by threats from her mother and that the victim's testimony contradicts itself. ■ In *People* v. *Haywood*, 131 Cal.App.2d 259, 261 [280 P.2d 180], the court said:

"It is, of course, fundamental that the credibility of a witness is for the determination of the trier of fact. Hence conflicts and inconsistencies in the testimony of an individual witness are to be resolved by the fact finding authority. [Citing authorities.] Thus the trial judge was entitled to accept as true the testimony of the complaining witness on direct examination rather than the conflicting testimony which she later gave."

■ Respondent correctly notes that even if perjury existed, evidence of perjury can not be shown effectively by extrinsic means on an appeal. (*People* v. *Candiotto*, 183 Cal.App.2d 348 [6 Cal.Rptr. 876].)

■ Respondent cites *People* v. *Gregory*, 123 Cal.App.2d 582, 584 [267 P.2d 58], for the rule that on an appeal from a verdict of guilty the reviewing court must "take cognizance and accept the view of the evidence most favorable to the judgment rendered" and may not "interfere with the conclusions arrived at by the duly constituted arbiter of the facts, if the circumstances reasonably justify the verdict. . . ."

With respect to his contention that he was not adequately represented by the public defender, the appellant argues in his brief, "There was no defense offered other than my own denial, thus by a passive act of refusal the public defender was able to frustrate the efforts of the accused to obtain evidence necessary for his defense." ■ A careful examination of the record indicates no lack of diligence on the part of the defendant's lawyer. Counsel thoroughly cross-examined the prosecution witnesses, and he presented three witnesses, including the defendant. The public defender attempted to illustrate fully the appellant's version of the incidents involved and to bring home to the jury defendant's con-

tention that the mother of the little girl had contrived the story against him because he had refused her amorous advances. After weighing appellant's theories and considering the totality of the evidence in the case, the jury found that appellant was guilty as charged.

One of the appellant's contentions is that his counsel wrongfully failed to call as a witness a doctor who had examined the little girl two days after the alleged occurrence. However, the defendant was not charged with rape, where proof of penetration is essential; section 288 of the Penal Code does not require proof of penetration or emission. *People* v. *Coontz,* 119 Cal.App.2d 276, 279 [259 P.2d 694], points out that: ''. . . the only requirement is a touching with lustful intent.'' Nor is corroboration of a child's testimony a necessary element of proof in a prosecution for violation of section 288 of the Penal Code. (*People* v. *Cox,* 104 Cal. App.2d 218 [231 P.2d 91]; *People* v. *Terry,* 99 Cal.App.2d 579 [222 P.2d 95].)

In *People* v. *Ash,* 70 Cal.App.2d 583, 584 [161 P.2d 415], it is stated that ''it is not necessary . . . that the defendant touch the naked body of the prosecuting witness, it being sufficient that a lewd or lascivious act is committed upon or with the body, or some part or member thereof, of a child under the age of fourteen years.'' It is obvious that if the doctor had been called and had testified that there had been no completed intercourse, this would not have been ground for finding the defendant not guilty.

The appellant also urges that the child admitted on the witness stand that her own father had at some time in the past molested her, and appellant complains of the fact that further evidence of what the father had done was not solicited by his counsel; appellant suggests that such facts would have been a part of the res gestae of the offense, but to state the proposition is to demonstrate its unsoundness. The crime by the father, if it occurred, was on a different occasion, and could not in any sense be a part of the res gestae of the offense charged against the defendant.

A defense attorney, by necessity, has a wide discretion as to the adoption of proper and effective trial tactics. He must conduct his client's case in accordance with his best judgment. And an attorney's decisions concerning the method and manner of presenting the defense is imputed to and is binding upon an appellant unless he has raised objections to the acts or omissions of his lawyer at the time of the

trial itself. (*People* v. *Jones*, 177 Cal.App.2d 420 [2 Cal. Rptr. 305].) No such protest was made by appellant, and any possible objections were thereby waived. ▮ Even if it were shown by the record (and it is not) that appellant's attorney made one or more mistakes in judgment concerning the method of presenting appellant's case, such mistakes alone would not constitute constitutionally inadequate representation or a denial of due process. The handling of a defense can only be found inadequate in those rare cases where "counsel displays such a lack of diligence and competence as to reduce the trial to a 'farce or a sham.' " (*People* v. *Barreras*, 181 Cal.App.2d 609, 617 [5 Cal.Rptr. 454]; *People* v. *Wein*, 50 Cal.2d 383 [326 P.2d 457].)

The record indicates diligent representation by counsel, and there is nothing to suggest that the defense as urged by the public defender was merely a "farce or a sham" or that appellant's attorney failed to furnish him with a defense as complete as was possible in the circumstances. The defendant was convicted by ample evidence which was believed by the jury and by the trial court. In the opinion of this court the defendant received a vigorous and sincere representation by his counsel, and he cannot justly complain that he was not accorded a fair trial or that any of his constitutional rights were violated. (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 13.)

The judgment is affirmed.

Stone, J., concurred.

Brown (R.M.) J., being disqualified, did not participate.