[Crim. No. 8296. Third Dist. Sept. 10, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EARL CRUME, Defendant and Appellant.

**COUNSEL**

Roger Andriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Monte B. Lake, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PUGLIA, P. J.**—Defendant appeals after jury conviction of violation of Penal Code sections 288 (two counts)[1] and 288a (one count).[2] In respect to the latter crime, it was also charged and found by the jury that defendant's victim was under the age of 14 and he, the defendant, was more than 10 years her senior. The victims of the offenses, Tanya and Tamara Crume, are defendant's adoptive daughters. They were 13 and 12 years old respectively in February 1974.

Tanya testified to a single incident of sexual molestation occurring during the month of February 1974 in which her father threatened her, penetrated her vagina with his finger, and coerced her to copulate his penis orally.

Tamara testified that in February 1974 the defendant attempted by force to compel her to copulate his penis orally but she refused to do so.[3] Tamara also testified that one month prior to the February 1974 incident, defendant penetrated her vagina with his finger.

[1]Section 288 provides: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

[2]At the time of commission of the offense, section 288a provided: "Any persons participating in an act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment in the state prison for not exceeding 15 years, or by imprisonment in the county jail not to exceed one year; provided, however, whenever any person is found guilty of the offense specified herein, and it is charged and admitted or found to be true that he is more than 10 years older than his coparticipant in such an act, which coparticipant is under the age of 14, or that he has compelled the other's participation in such an act by force, violence, duress, menace, or threat of great bodily harm, he shall be punished by imprisonment in the state prison for not less than three years. The order of commitment shall expressly state whether a person convicted hereunder is more than 10 years older than his coparticipant and whether such coparticipant is under the age of 14. The order shall also state whether a person convicted hereunder has compelled coparticipation in his act by force, violence, duress, menace, or threat of great bodily harm."

[3]Tamara had testified at the preliminary examination that on this same occasion she had in fact been forced to commit and did accomplish an act of oral copulation upon defendant. The incident was charged in the information as a second count of violation of Penal Code section 288a. It was dismissed on motion of the People at the close of their case-in-chief.

In February 1974, Tanya complained to defendant and her mother of defendant's improper conduct. As a result, a report was made to the sheriff and defendant was arrested.

Defendant, testifying in his defense, denied any improper conduct with the girls. He claimed the victims were motivated by a desire to escape his firm but solicitous discipline.

### The Stanley Rule

Defendant contends that evidence of uncharged offenses was received by the jury in violation of the rule announced in *People v. Stanley* (1967) 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913]. Tanya testified in the People's case-in-chief to an occasion in February 1973 in which defendant felt her vagina with his fingers. Shortly after, she complained to her mother that her father "was bothering [her];" that he was "trying to feel [her] up." The foregoing testimony was received without objection although the information charged only one act of lewd and lascivious conduct (Pen. Code, § 288) with Tanya who had already testified to a similar incident occurring in February 1974.[4]

---

[4]Count I of the information, filed June 13, 1974, charged a violation of Penal Code section 288 upon Tanya committed "within three years last past." Defendant did not demand an election as to which of the two lewd and lascivious acts—the one occurring in February 1974 or in February 1973—constituted the charged violation. (See *People v. Castro* (1901) 133 Cal. 11, 13 [65 P. 13]; *People v. Ruiz* (1920) 48 Cal.App. 693, 694-695 [192 P. 327].) Nor does it appear that the district attorney voluntarily made an election before argument to the jury. The arguments not being part of the record on appeal, we are unable to determine if an election was then made. If no election is made, the offense as to which evidence is first introduced (here the incident of February 1974) is deemed to constitute the offense charged. (*People v. Williams* (1901) 133 Cal. 165, 169 [65 P. 323]; *People v. LaMantain* (1949) 89 Cal.App.2d 699, 701 [201 P.2d 598].)

It would appear likely that the trial proceeded under the implicit understanding that the February 1973 incident constituted the charged violation of section 288 upon Tanya. Testimony about the February 1974 incident was concerned primarily with conduct constituting a violation of section 288a, although Tanya testified that, in the course of that event, defendant touched her vagina with his hand. If the February 1973 incident was in fact the basis of the charged Penal Code section 288 violation with Tanya, the lewd and lascivious conduct otherwise accompanying the instance of oral copulation in February 1974 would be admissible nevertheless as part of the res gestae of the latter offense. (*People v. Raucho* (1935) 8 Cal.App.2d 655, 668 [47 P.2d 1108]; *People v. Hunt* (1936) 17 Cal.App.2d 284, 286-287 [61 P.2d 1208]; *People v. McBride* (1945) 69 Cal.App.2d 331, 334-336 [159 P.2d 59]; see 19 Cal.Jur.2d (rev.) Evidence, §§ 520, 521.)

In any event, the trial court instructed the jurors that they must all agree that defendant committed the same act or acts in order to find him guilty (CALJIC No. 17.01).

In cases involving sex crimes, evidence of other, not too remote, sex offenses with the prosecuting witness is admissible to show a lewd disposition or the intent of the defendant towards the victim. (*People v. Stanley, supra,* 67 Cal.2d at p. 816.) Where, however, such cases are reduced to a contest of credibility between the victim and the defendant as to the commission of the acts charged, the trier of fact is not aided by evidence of other offenses, where that evidence is limited to the uncorroborated testimony of the prosecuting witness (*id.,* at p. 817).

There was no evidence independently corroborating Tanya's testimony concerning the February 1973 incident. Accordingly, unless that testimony constituted the violation of Penal Code section 288 charged with regard to Tanya, it falls within the proscription of the *Stanley* case and was inadmissible.[5]

The testimony was received without objection or motion to strike. Generally, questions of admissibility of evidence will not be reviewed on appeal absent a timely objection at trial specifying the grounds sought to be urged on appeal. (*People v. Welch* (1972) 8 Cal.3d 106, 114-115 [104 Cal.Rptr. 217, 501 P.2d 225]; Evid. Code, § 353,)

We recognize that the nature of the offenses charged here bring this case within the rule requiring rigorous insistence upon observance of the rules of admissibility of evidence. (*People v. Jones* (1954) 42 Cal.2d 219, 226 [266 P.2d 38].) Accordingly, despite the failure to preserve the point on appeal by timely objection, we have examined the entire record to determine whether evidence of the February 1973 incident resulted in a miscarriage of justice.

The entire February 1973 incident may be summed up as follows: Defendant came into Tanya's bedroom about 9 p.m. one evening to say goodnight. She was wearing a nightgown and was in bed. Defendant reached under the covers between her legs, touched her

---

[5]As previously indicated (see fn. 4, *ante,* p. 809), the record is not clear as to which of the two instances of lewd and lascivious conduct constitutes the violation of section 288 charged in the information with respect to Tanya. This confusion is compounded by uncertainty whether the defendant's attack on evidence of uncharged acts introduced in the prosecution's case-in-chief encompasses the details of the February 1973 incident herein described. Therefore, for purposes of this appeal, we assume that the February 1974 incident constitutes the basis for the charged offense, that the February 1973 event thus constitutes evidence of an uncharged act; and that defendant's assignment of *Stanley* error on appeal encompasses all the evidence concerning the February 1973 incident, despite the lack of objection thereto.

vagina with his fingers and "felt around" for a second or two. Reacting, Tanya rolled over and defendant reached for her breast. She bit him on the hand and defendant left the room.

Disgusting and revolting though such conduct may be, it is of a significantly diminished order of depravity in comparison to the February 1974 incident to which Tanya had already testified in lurid detail. Viewed in that perspective, the evidence of the February 1973 incident could not have added a single increment to the prejudice inuring to defendant from proof of the February 1974 incident. Moreover, it is simply illogical to suppose that but for evidence of the less egregious misconduct in February 1973, the jurors would not have accepted as true Tanya's testimony of the more aggravated incident of February 1974. Therefore, we conclude that the receipt by the jury of evidence of the February 1973 incident, if error, was not prejudicial. (Cal. Const., art. VI, § 13; *People* v. *Williams* (1975) 13 Cal.3d 559, 566 [119 Cal.Rptr. 210, 531 P.2d 778].)

Immediately after Tanya's description of the February 1973 incident and the complaint thereof to her mother, the following exchange took place between the witness and the prosecutor: "Q. [Prosecutor] Did [your mother] question you anymore with respect to the accusation that you made? A. Yes. Q. And what did you say in response? A. I said that it had been going on for a long time." An objection immediately thereafter was sustained and the trial court struck the response and admonished the jury to disregard it. We shall not speculate that the jury failed to heed the court's admonition which, given the relative brevity and generality of the inadmissible response, was adequate to dispel any conceivable prejudice which it might have occasioned. (See *People* v. *Henley* (1969) 269 Cal.App.2d 263, 271 [74 Cal.Rptr. 611].)

In his direct testimony, defendant was asked by his attorney whether he had "at any time" committed acts either of oral copulation or "lewd touching" with Tanya or Tamara. He unequivocally denied such conduct.

Thereafter, in the prosecution's rebuttal case, both girls testified to numerous other incidents of sexual misconduct by defendant committed upon them over a period of six years antedating the trial. They described instances of sexual touching and fondling, forced oral copulation and

attempted intercourse. Their testimony, with one exception, was uncorroborated.[6]

█ Defendant cites the rebuttal testimony of the victims as reversible error under the rule of *People* v. *Stanley, supra.* The underlying purpose of the *Stanley* rule was succinctly stated in *People* v. *Kazee* (1975) 47 Cal.App.3d 593 [121 Cal.Rptr. 221]. The court observed that "the rationale for admissibility of evidence [of uncharged acts] of sexual misconduct with others, in cases where there is no issue as to identity, absence of accident, and so forth, is simply corroboration of the complaining witness. Where such corroboration comes from the mouth of another witness, we admit it. When it consists of nothing but the complaining witness corroborating himself, we reject it." (P. 596.)

In the instant case, there was no issue either as to identity, lack of accident or inadvertence. The evidence of the offenses was unambiguous. The defense was unequivocal denial. The trial hinged on the jury's assessment of the relative credibility of the victims and the defendant. Nonetheless the instant circumstances are distinguishable from the class of cases to which the general rule just stated is applicable.

In *People* v. *Westek* (1948) 31 Cal.2d 469 [190 P.2d 9], the defendant, charged with multiple counts of sex offenses, testified on direct examination that he had never at any time committed sexual offenses upon any boy. On cross-examination, defendant denied sexual misconduct with three specifically named boys who thereafter testified on rebuttal that defendant had committed violations of Penal Code section 288 upon them. The Supreme Court stated that the general rule excluding evidence of other crimes did not control where defendant, "apparently actuated by a desire to place himself in an especially favorable light before the jury, injected into the case in the course of his direct examination the whole subject matter of his past conduct with any boy, and it was to offset the effect of this gratuitous testimony that the prosecution introduced the challenged evidence. [¶] The propriety of the rebuttal testimony stems from the settled rule that it is proper in a criminal case to cross-examine a defendant upon any relevant and material matter elicited on his direct examination, for the purpose of showing conduct or statements inconsistent with his direct testimony." (*People* v. *Westek, supra,* 31 Cal.2d at p. 476.)

---

[6]Tamara testified that she observed Tanya and defendant in an act of oral copulation on an occasion several years before the charged incidents.

While generally condemning evidence of uncharged acts through the uncorroborated testimony of the prosecuting witness, the *Stanley* court was careful not to impose an inflexible rule for all similar occasions. "It would not be sound law, or serve the ends of justice, if the courts were to adopt rigid rules for the admission and exclusion of evidence of other crimes. As was said in *People* v. *Sheets,* 251 Cal.App.2d 759, 764 . . . : 'If both justice and predictability of decision are to be served, rigidity of tests of admission and exclusion, in our opinion, is not the answer. We believe that whenever the quarrel is between relevancy and the policy of the law to protect the accused against bias and prejudice likely to be engendered from the admission of relevant evidence, a balancing process must take place—a weighing of the probative value of the evidence offered against the harm it is likely to cause.' [Citations.]" (*People* v. *Stanley, supra,* 67 Cal.2d at p. 818.)

■ The prophylactic purpose of the *Stanley* rule is directed to evidence of uncharged offenses introduced to fortify the credibility of the *prosecuting witness.* The rule is not aimed at evidence which is relevant to the credibility of the *defendant.* The rule is intended to protect the defendant against bias and prejudice likely to result from the receipt of evidence of uncharged sex offenses. To that end, it prohibits the affirmative use by the People of such admittedly relevant evidence in the absence of corroboration. However, the rule was not designed to equip the defendant with a shield behind which to deceive the trier of fact, impervious to contradiction. ■ The rebuttal testimony of Tanya and Tamara has probative value upon the issue of defendant's credibility and, for the reasons articulated in *People* v. *Westek, supra,* is admissible to show conduct inconsistent with the defendant's testimony on direct examination. (See Evid. Code, § 780, subd. (i).)

### The Complaint

■ After Tanya's testimony concerning the February 1973 incident and the report thereof to her mother, she was permitted over timely objection to explain what she meant by the complaint that defendant was "bothering" her. She explained that she meant to convey that defendant "Tried to make me copulate his penis and felt my body." A motion to strike was denied.

Evidence of a complaint by a nonconsenting victim of a sex offense is admissible as an exception to the hearsay rule. The evidence thereof

must be confined to the victim's statement of the nature of the offense, without details, and the identity of the asserted offender. (*People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433].) The statement to which objection was made was not embodied in the victim's complaint to her mother and was therefore inadmissible. We perceive no prejudice to defendant, however, from the erroneous ruling. Both girls testified in detail to numerous sex crimes committed by defendant including oral copulation. Any prejudicial shock value which an accusation of oral copulation upon children might arouse in a lay jury was thoroughly dissipated by the repetition in admissible testimony throughout the trial of similar incidents.

## INADEQUACY OF COUNSEL

Prefacing our discussion under this heading, we observe that defendant was represented at trial by privately retained counsel of his choice. (Cf. *People* v. *Cook* (1975) 13 Cal.3d 663, 671-672 [119 Cal.Rptr. 500, 532 P.2d 148].) He nonetheless urges upon us the inadequacy of his trial counsel, demonstrated, he claims, in two particulars.

■ First, defendant complains of counsel's failure to call various persons who, he asserts, would have given favorable testimony in his behalf. Defendant encounters the familiar obstacle typical to claims of this kind; with one exception, the record is completely silent as to the anticipated testimony of the absent witnesses.

Defendant has the burden of demonstrating as a reality that he was prejudiced by counsel's failure; speculation will not substitute for the required proof. (*People* v. *Martinez* (1975) 14 Cal.3d 533, 538 [121 Cal.Rptr. 611, 535 P.2d 739].) To the extent defendant's claims of inadequacy have no support in the record, they are speculative within the meaning of the rule just stated.

■ The record does contain an offer of proof that the witness Gilliland, if called, would testify favorably as to defendant's character for truth, honesty and veracity. The offer, made in defendant's surrebuttal case, was properly denied by the trial court because the prosecution in its rebuttal case had not presented any evidence bearing on that character trait of defendant. (See Pen. Code, §§ 1093, 1094; *People* v. *Pike* (1962) 58 Cal.2d 70, 93 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Remington* (1925) 74 Cal.App. 371, 376 [240 P. 526].)

Gilliland did testify in surrebuttal to his opinion that the victims were untruthful. This testimony was directly responsive to the People's rebuttal evidence and is obviously the reason why Gilliland was offered by defendant as a witness in surrebuttal. The additional offer of testimony relative to defendant's credibility appears to have been an afterthought secondary to the original purpose.

■ A failure to assert a crucial defense due to ignorance of law or facts must be distinguished from a mere error in judgment. "[T]o reverse for an honest mistake or error in trial judgment would subject every conscientious lawyer who unsuccessfully defends a defendant in a criminal action to 'second guessing' or 'Monday morning quarterbacking' and would flood the appellate courts with unmeritorious appeals." (*People* v. *Henley, supra,* 269 Cal.App.2d at p. 272.) At worst, counsel's deficiency, if such it was, constituted no more than an error in judgment which did not work to defendant's prejudice. Furthermore, selection of potential witnesses involves tactical decisions within the control of trial counsel and accordingly is not a basis for a claim of inadequate representation. (*In re Clarence B.* (1974) 37 Cal.App.3d 676, 681 [112 Cal.Rptr. 474]; *People* v. *Demerson* (1970) 4 Cal.App.3d 263, 269 [84 Cal.Rptr. 202].)

■ Secondly, defendant charges his trial counsel with inadequacy for failing to obtain a trial transcript prior to moving for new trial, contending that lack of a reporter's transcript inhibited counsel in documenting allegations of error, thus reducing his chance of obtaining a new trial.

The new trial motion was submitted to the judge who presided over the trial on the points and authorities of the parties. The court was presumptively familiar with the facts on which the motion was based. Defendant fails to demonstrate how he was prejudiced by lack of a transcript at this stage of the proceedings. As with his other claim of inadequacy, this one is based on speculation and is consequently without merit.

### WITHHOLDING OF EVIDENCE

■ Physical examinations of both victims disclosed that their hymens were intact. The examinations were made the first day of trial, inferentially at the instance of the district attorney. Defendant's motion

for new trial characterized this evidence as "newly discovered." (See Pen. Code, § 1181, subd. 8.) In a written, unsworn statement filed in conjunction with that motion, counsel represented that defendant had not learned of this evidence until after the trial. At the hearing on the motion for new trial, the district attorney orally advised the court in the presence of counsel and the defendant that this evidence was disclosed to counsel when it "became relevant," that is, during the prosecution's rebuttal case after Tanya testified that defendant attempted sexual intercourse with her.[7] Defendant's attorney did not challenge the prosecutor's statement that he had been told of this evidence during the rebuttal phase of the trial. Under the circumstances therefore, we accept as true that he was so told and was then aware of the existence of this evidence.

Defendant argues that he could possibly have obtained expert testimony tending to negate the charged misconduct had he been aware of the results of the physical examinations earlier.[8] The results of the examinations were available for defendant's use in his surrebuttal case. If additional time was required to take optimum advantage of this evidence, defendant could have requested a continuance for that purpose. He did not do so. Defendant has failed to demonstrate prejudice from any delay in apprising him of the physical examinations of the victims.

Furthermore, defendant's motion for new trial on grounds of newly discovered evidence was wholly unsupported by the required competent showing (see Witkin, Cal. Criminal Procedure (1963) Judgment and Attack in Trial Court, § 576, p. 580); therefore the trial court had no alternative but to deny it.

### PSYCHIATRIC EXAMINATIONS OF VICTIMS

Defendant alleges that the psychiatrist appointed by the trial court on his motion to examine the victims was biased in favor of the prosecution, thus denying him the benefit of the impartial psychiatric examination to

---

[7] Tanya testified she did not know if penetration had been achieved.

[8] The physical examinations did not reveal anything necessarily inconsistent with the victims' testimony. The victims testified to digital vaginal penetration. On appeal, defendant argues that his "big hands and large fingers" would have perforated the hymen. There is no evidence of the size of defendant's hands. His conclusion, even if medically supportable, is thus conjectural.

which he is entitled. (See *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) His inference of a want of professional integrity from the fact that the doctor, a frequent expert witness, had done substantial work on referral from the district attorney's office is conjectural and finds no support in the record.

## PROSECUTOR'S ARGUMENT TO THE JURY

In his opening brief, defendant asserts that in argument to the jury the district attorney "distorted the evidence with his own opinions and generally appealed to the passions and prejudices of the jurors." The arguments of the district attorney are not part of the record on appeal. Counsel's declaration in support of defendant's motion to augment the record on appeal to include those arguments states merely that the prosecutor's opening argument "apparently was highly prejudicial and improper." The motion was denied for lack of an adequate showing (Cal. Rules of Court, rule 12; *People* v. *Hill* (1967) 67 Cal.2d 105, 123-125 [60 Cal.Rptr. 234, 429 P.2d 586]). ▮ Matters outside the record will not be considered on appeal (*People* v. *Floyd* (1970) 1 Cal.3d 694, 710 [83 Cal.Rptr. 608, 464 P.2d 64]).

## INSUFFICIENCY OF THE EVIDENCE

▮ Defendant's contention of the insufficiency of the evidence merits but brief consideration. The testimony of both victims was impeached by prior inconsistent statements. There was other evidence reflecting adversely upon their credibility. The credibility of the witnesses, however, is a matter exclusively to be determined by the jury. (*People* v. *Pilgrim* (1963) 215 Cal.App.2d 374, 378 [30 Cal.Rptr. 170].)[9] Our function as a reviewing court is not to determine whether or not guilt was proved beyond a reasonable doubt, but whether there is substantial evidence to support the verdict of the jury. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) The testimony of the victims as to the charged offenses itself supplies substantial

[9]The trial court instructed the jury to examine the victims' testimony with caution. (CALJIC Nos. 10.37, 10.44.) The trial was conducted before the decision in *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247], wherein those instructions were disapproved. (See CALJIC (1976 Supp.) Pamp. No. 1.)

evidence to support the convictions and thus renders unnecessary detailed review on appeal of all the evidence.

The judgment is affirmed.

Regan, J., and Paras, J., concurred.

A petition for a rehearing was denied September 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1976.