[Crim. No. 32139. Second Dist., Div. Four. Mar. 14, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN JOSE ALVA, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner and Nancy Ann Stoner, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALARCON, J.**—Following a jury trial, Juan Jose Alva was convicted, as charged, of incest, in violation of section 285 of the Penal Code (count I), the commission of lewd and lascivious acts upon a child under the age of 14 years, in violation of section 288 of the Penal Code (count II), and unlawful sexual intercourse, in violation of section 261.5 of the Penal Code (count III).

Defendant was sentenced to the state prison on each count. The sentences were ordered to be served concurrently.

*Prosecution Evidence*

The complaining witness, L., was born on August 15, 1964. Her parents had been divorced for four years as of the time of trial. In November of 1976, L. went to live with her father, the appellant, because she could not get along with her mother. Appellant's apartment consisted of a bedroom, a living room, and a kitchen. Appellant's mother slept in the bedroom. L.

slept with appellant in the living room on a couch which converted into a bed.

On a Wednesday evening in mid-February, at around 9:30 p.m., appellant got into bed, rolled L. over, pulled down his shorts and placed his penis inside her vagina. As he did so, L. told him to get off and she pushed him off. L. got up and went to the bathroom because she was wet. She did not tell anyone immediately afterward because her father told her not to and she was afraid of him. Appellant's mother slept in the bedroom with the door open and could have seen what happened between L. and her father. The next night a second act of intercourse occurred at the same time and place. After that, appellant had an act of intercourse with L. every week or two until July 28, 1977. L. did not tell anyone about the acts of sexual intercourse during this entire period because of her fear of her father. She got along well with her father during this time. She did not hate her father. In May 1977, L.'s 11-year-old brother came to live with his father. He slept in the bedroom with his grandmother.

L.'s menstrual period started each month on the sixth day. On August 6th, L. phoned her mother because she had not begun to menstruate and asked if she could move back into her mother's home. On August 7, 1977, L. was taken to her mother's house. She immediately told her mother what had been going on with her father. L. was not pregnant; her menstrual period began on August 8, 1977.

### Defense Testimony

The following evidence was offered on behalf of appellant. Maria Alva testified that she slept in the bedroom of appellant's small apartment. L. slept on a sofa bed. Appellant slept in a sleeping bag on the floor. Maria Alva never saw appellant in bed with L. She never heard any strange noises coming from the living room. The sofa bed was about 10 to 15 feet from her bed.

Maria Alva changed the sheets on L.'s bed about every third day. She never saw any evidence of sexual activity. Mr. Alva insisted that L. be home by 5 o'clock in the afternoon. She was not permitted to go out in the evening.

Marcos Alva testified that his mother kicked L. out of the house after they got into a fight. Marcos telephoned his father at L.'s request.

Appellant took them to his apartment. The next day Marcos returned to his mother's house. In May, Marcos went to live at his father's apartment. He slept on a sofa in the living room. He did not sleep with his grandmother. Marcos never saw his sister and his father in the same bed. When L. lived with her mother she stayed out at night until about 10 o'clock.

Rita Hernandez testified she met appellant in September of 1976. Mrs. Hernandez began having sexual intercourse with appellant once or twice a week about two months after they met.

Appellant testified that, while L. stayed with him, she slept on a sofa bed and he slept on the floor in a sleeping bag. Marcos Alva slept on a sofa, not with his grandmother. Appellant did not ever sleep in the same bed with L.

### Section 402 Proceedings

At the request of the prosecutor, the trial court conducted a hearing pursuant to section 402 of the Evidence Code to determine if the testimony of Dr. George Y. Abe should be excluded.

Dr. Abe testified that he examined L. under court appointment. Dr. Abe interviewed L. but did not give her any psychological test. He obtained from L. her version of what had occurred. He also questioned her as to what sensation she had felt. Defense counsel had told Dr. Abe that Marcos Alva had stated that (1) L. had come home late at night, (2) that she had brought boys home when her mother was away, and (3) that she had run away from home for a couple of days. L. denied each of these allegations. When asked his opinion as to her veracity Dr. Abe testified on direct examination, that L. was not suffering from any psychiatric disorder, but he felt there was some question as to whether or not she was being frank with him or telling him all that really occurred, if it did occur.[1] His opinion was based on the fact that she did not give him an idea of what sensations she had, whether distasteful or pleasurable, other

---

[1] On cross-examination the following colloquy occurred as to the presence of a psychiatric disorder.

"Q. Now, you indicated on direct examination by Mr. Gist there was no psychiatric disorder as such that was involved in this case, is that correct?

"A. That is correct. I could not say that there is something—she may have some mild adjust—adolescent adjustment problems, but it wasn't of a serious nature."

Dr. Abe was not questioned, and gave no opinion, as to the relationship, if any, between mild adolescent adjustment problems and the ability to tell the truth.

than pain, and the contradictions between her brother's statements about certain events and her denial thereof.

The trial court asked Dr. Abe if it was his opinion that L.'s testimony was unreliable because she didn't or wouldn't tell him she had any other sensations other than a feeling of pain. Dr. Abe replied as follows: "No. All I am raising is the question is it possible. I am not saying she is unreliable or anything. I am saying there is a possibility that it could be."

The trial court granted the prosecutor's motion to exclude the testimony of Dr. Abe on the ground that the prejudicial effect of his testimony outweighed its probative value. In explaining its ruling the court commented as follows: "The court sustains the motion pursuant to section 402, that the testimony that is offered by reason of the fact that the doctor's professional background would far outweigh its probative value. The opinions and conclusions that he would reach are precisely those that the jurors are being asked to reach. It does not require and should not require an expert to pronounce upon it."

### Effect of Proof of Similar Uncharged Acts Without Election or Appropriate Instruction

As noted above, the prosecution presented evidence of the commission of a number of acts of sexual intercourse over a period of time between February 1977 and July 1977. At no time did the prosecution, prior to argument, inform the jury of the specific act upon which he intended to rely to prove each of the alleged offenses. No demand was made by defense counsel for an election. The court gave no instruction to the jury concerning their responsibility when faced with proof of similar uncharged offenses. Prior to the voir dire examination, the trial judge read the following portions of the information to the jury: "On or about a period of time between February 9, 1977, and July 28, 1977, that Mr. Alva did violate Penal Code section 285, a crime commonly referred to as incest; That he did willfully, unlawfully and knowingly and incestuously have sexual intercourse with L. . . . , who was then and there his daughter. [¶] Count II of the information charges violation of section 288 of the Penal Code, during the same period of time, alleging that the defendant, Mr. Alva, did willfully, unlawfully, feloniously and lewdly commit lewd and lascivious acts upon the body or person of L. . . . , a child under the age of 14 years, with the intent of arousing, appealing to or gratifying the lust, passion or sexual desires of either the defendant or

the child. [¶] Count III of the information charges violation of section 261.5 of the Penal Code, an offense commonly referred to as an unlawful sexual intercourse, same time period, February 9, 1977, through July 19, 1977, in which it is alleged that Mr. Alva did willfully, unlawfully and feloniously have and accomplish acts of intercourse upon L. . . . , who was then and there a person under the age of 18, to wit, 13 years of age."

Thus, the jury was made aware by the court at the outset of the trial of the fact that the defendant was accused of committing each of the three crimes charged on some unspecified date between February and July 1977, but was never told by the court how they were to select the act which constituted each of the three charged offenses.

The leading case in California concerning the problem before us is *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13]. In *Castro,* the prosecutor alleged that the defendant committed the crime of rape of a woman under the age of consent, now known as unlawful sexual intercourse, on June 30, 1899. At trial, evidence was presented showing the commission of four separate acts of sexual intercourse. These acts occurred over a period of several months. None of the acts occurred on June 30, 1899. In upholding the trial court's order granting a new trial, the Supreme Court commented as follows: "Under the *instructions* given to the jury in the case at bar, the defendant should have been convicted, if any one of the various acts of intercourse sworn to by the prosecutrix was established beyond a reasonable doubt; but, certainly, the defendant was not called upon to defend himself against all of these respective acts of intercourse, extending through a period of several months. The information only charged one act, and upon that allegation the case must stand or fall. Possibly, any one of the acts sworn to by the prosecutrix could have been selected by the state as the act charged in the pleading, but the entire four acts could not be so selected. The state, at the commencement of the trial, should have been required to select the particular act upon which it relied to make good the allegation of the information. This was not done; and even conceding that the failure to make such election at that time did not constitute error because of the want of demand upon the part of the defendant to make the election, still, when the case went to the jury, the court, in some form, should have directed their minds to the particular act of intercourse which it was incumbent upon the state to establish by the evidence, before a verdict of guilty could be returned against the defendant. This was not done. (*People* v. *Castro, supra,* 133 Cal. at pp. 12-13.)" (Italics in original.)

In *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323], the Supreme Court had before it another case involving a charge of statutory rape in which the prosecutor introduced evidence of uncharged acts of sexual intercourse involving the same victim. The trial court instructed the jury that if the jury found that defendant had sexual intercourse with the prosecutrix at any time within three years before the filing of the indictment, they must find him guilty. In support of its order reversing the judgment of conviction, the Supreme Court observed at page 168: "Each of these acts was a separate offense, and the defendant could be tried for either, and separately for each of them. *The jury were not even told that they must all agree that some specifically described act had been performed.* A verdict of guilty could have been rendered under such an instruction, although no two jurors were convinced beyond a reasonable doubt, or at all, of the truth of the charge, as to any one of these separate offenses. Even worse than that was possible. As to every specific offense which there was an attempt to prove, and which could be met by proof, the defendant may have established his defense, and yet upon the general evidence of continuous crime, which, in the nature of things, he could only meet by his personal denial, he may have been convicted. And how could he defend when he was not informed as to what particular offense, out of the hundreds testified to by the prosecutrix, he was to be tried? Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse." (Italics added.)

■ Applying the *Castro-Williams* principles to the matter before us, we too are unable to determine which act the jury unanimously agreed upon as the offense set forth in each count of the information. The jury was not told they must unanimously agree upon the same act in order to find the defendant guilty as required by California law. (See *People* v. *Rogers* (1978) 21 Cal.3d 542, 550 [146 Cal.Rptr. 732, 579 P.2d 1048].)

Respondent argues that an instruction to the jury is not required where no demand for an election is made. We are asked to invoke the presumption that, in the absence of an election, the offense as to which evidence is first introduced is deemed to constitute the offense charged. Respondent correctly states the rule. (See *People* v. *Williams, supra,* 133 Cal. 165, 169.) However, this presumption, standing alone, is of no assistance to the jury in meeting its responsibilities, in the absence of an instruction either that the offense as to which evidence is first introduced is deemed to constitute the offense charged (see *People* v. *LaMantain*

(1949) 89 Cal.App.2d 699, 701 [201 P.2d 598]) or that they must all agree that the defendant committed the same act in order to find him guilty (see *People* v. *Crume* (1976) 61 Cal.App.3d 803, 809, fn. 4 [132 Cal.Rptr. 577]).

The failure to instruct the jury as to the manner in which it should approach its task when faced with proof of continuous criminal conduct, although only one criminal act was charged in each count as having occurred some time within a five-month period, was prejudicial error which requires reversal of the entire judgment. For the guidance of the trial court, in the event of a retrial of this matter, we will discuss some of the contentions raised by appellant.

### Admissibility of the Testimony of the Psychiatrist

■ Appellant contends the exclusion of Dr. Abe's testimony was prejudicial error. Appellant relies on the principle, first delineated in *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 at pages 171-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], that psychiatric testimony concerning the mental and emotional condition of the complaining witness in a sex-violation case is admissible for purposes of impeachment.

In *People* v. *Russell* (1968) 69 Cal.2d 187 [70 Cal.Rptr. 210, 443 P.2d 794], the Supreme Court spelled out the procedure a trial judge must follow in exercising his discretion as to whether to admit the results of a psychiatric examination of a complaining witness in a sex case as follows (at pp. 196-197): "When such an examination *has* been ordered by the court, however, and evidence based upon it is sought to be introduced, the court must address itself to considerations dealing with the specific evidence offered. Thus, it must be determined from the offer of proof and, if necessary, from *voir dire* examination, if the evidence sought to be introduced bears upon the matter at issue, to wit, the *credibility* of the complaining witness—by showing the effect of a particular mental or emotional condition upon her ability to tell the truth. In addition, the evidence offered must be examined with a view to ensuring that the knowledge which it represents can be effectively communicated to the jury; evidence studded with arcane terms is of no benefit to a lay fact-finding body. Further, the court should make a determination as to whether the examination which is the basis of the evidence utilized techniques of general scientific acceptance and was sufficiently thorough to facilitate a reliable opinion. Finally, the evidence should be examined with a view to preserving the integrity of the jury as the finder of facts:

expert opinion is admitted in this area in order to inform the jury of the effect of a certain medical condition upon the ability of the witness to tell the truth—not in order to decide for the jury whether the witness was or was not telling the truth on a particular occasion.[10] [Fn. omitted.] (See generally Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, supra,* 48 Cal.L.Rev. 648.) [¶] It is to be emphasized, however, that the considerations above suggested can be undertaken only in the course of a thorough review of the evidence sought to be introduced as it is set forth in the offer of proof. Further, we are of the view that the reasoning underlying the court's conclusion as to the admission of such evidence should appear to some degree in the record in order that the appellate review of that conclusion, which reaches only to abuses of the court's discretion (*Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 174-175), may be facilitated." (Italics in original.)

Applying the *Russell* test to the facts at hand we note that Dr. Abe testified that L. was not suffering from any psychiatric disorder. No facts were presented during the examination of Dr. Abe which established that L. was suffering from "a particular mental or emotional condition" which had an effect on her ability to tell the truth. In the absence of evidence that L. was suffering from a certain mental condition which affected her capacity to tell the truth, Dr. Abe's testimony would be relevant solely to raise a reasonable doubt as to whether L. was telling the truth concerning specific and contested factual issues. Psychiatric testimony which has the tendency to decide rather than to inform is inadmissible. Based on the testimony presented to the trial judge on the voir dire examination of Dr. Abe, it was not an abuse of discretion to exclude his testimony. The evidence supports the conclusion of the court that the effect of his testimony would be to usurp the jury's function. Thus the possible prejudicial effect of such testimony outweighed any probative value present in the tentative evaluation reached by Dr. Abe concerning L.'s credibility. The doubts Dr. Abe expressed concerning her failure to describe any sensation other than pain during sexual intercourse, and her denial of conduct described by her brother were matters which related to the question of whether she was telling the truth as to the crimes charged against appellant, rather than the existence of a specific mental or emotional condition which impaired her ability to tell the truth concerning sexual matters.

### Necessarily Included Offenses

Appellant contends that his convictions for unlawful sexual intercourse and incest must be reversed because each of these crimes is necessarily

included in the charge of lewd conduct with a child under the age of 14 years.

The test for determination as to whether an offense is a lesser included offense of another is as follows: " ' ". . . [W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." ' " (*People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].)

With respect to sex offenses, numerous cases have held that certain proscribed sexual conduct is necessarily included within the provisions of Penal Code sections prohibiting other sexual activities. For example, in *People* v. *Greer* (1947) 30 Cal.2d 589, 602 [184 P.2d 512], the court concluded that statutory rape as defined in subdivision (1) of Penal Code section 261 is necessarily included under the provisions of Penal Code section 288 prohibiting lewd conduct with a minor child. In *People* v. *Lindsey* (1967) 249 Cal.App.2d 6, 11 [57 Cal.Rptr. 190], a violation of Penal Code section 288a, oral copulation, was found included in the conviction for violation of Penal Code section 288. In *People* v. *Ross* (1965) 234 Cal.App.2d 758, 766 [44 Cal.Rptr. 722], forcible rape, in violation of Penal Code section 261, subdivision (3), was held to include a violation of Penal Code section 288.

▉ However, the determination that one offense is necessarily included within another prohibits conviction and punishment for both offenses only if defendant violated both Penal Code sections by committing only one act.

In *People* v. *Greer, supra,* 30 Cal.2d at page 600, the Supreme Court said: "Although the offense of contributing to the delinquency of a minor is necessarily included in the offenses defined in section 261(1) and 288 of the Penal Code, defendant could be convicted of all three offenses if separate acts served as the basis of each count. Indeed, defendant can be convicted more than once under the same statute, so long as he is prosecuted for separate acts. *The doctrine of included offenses is applicable only when the same act is relied upon for more than one conviction.*" (Italics added.)

In *People* v. *Slobodion* (1948) 31 Cal.2d 555 [191 P.2d 1], the California Supreme Court reviewed its holding in *Greer*. In *Slobodion,* defendant

had been convicted of and punished for violation of Penal Code section 288, lewd conduct with a minor, and section 288a, oral copulation. The court found no error in the multiple punishment, explaining at pages 561-562: "The reasoning of the Greer case would apply to the present one if the charges in both counts were based upon the same act, since section 288a is in part one of the Penal Code. We have concluded, however, that both counts in the present information are based upon separate acts. . . . [¶] In the present case defendant committed certain acts that could be considered rape or attempted rape; these acts clearly support the conviction for violation of section 288. . . . In addition, however, defendant also committed certain acts denounced by section 288a. Thus, this case is factually dissimilar to *People* v. *Greer.* Here, defendant could have been convicted of two crimes without resort to section 288; in *People* v. *Greer,* the defendant could have been convicted only of a violation of either section 261(1) or section 288, for the basis of his conviction in either case would depend upon the same act."

In *People* v. *Hurd* (1970) 5 Cal.App.3d 865 [85 Cal.Rptr. 718], defendant was convicted of and punished for violation of Penal Code section 285, incest; 288a, oral copulation; and 286, sodomy. The court found that, whether or not some of the offenses were necessarily included in any others, defendant had committed separate and distinct acts and that the multiple punishment therefor was proper. To the same effect see *People* v. *Hicks* (1965) 63 Cal.2d 764, 766 [48 Cal.Rptr. 139, 408 P.2d 747]; and *People* v. *Edwards* (1970) 12 Cal.App.3d 87, 92 [90 Cal.Rptr. 475].

Further, Penal Code section 654, which prohibits multiple punishment for a single act, does not bar the imposition of separate sentences in this case. In *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63] defendant, who had committed various offenses against a single victim over a one-hour period was convicted of forcible rape, first degree robbery, forcible sodomy, forcible oral copulation, and assault. The trial court stayed execution of sentence on the sodomy and oral copulation charges, holding that defendant could not be sentenced for both those offenses and the rape. The Supreme Court held: "None of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other. We therefore conclude that section 654 does not preclude punishment for each of the sex offenses committed by defendant." (23 Cal.3d at pp. 553-554.)

In the instant case, testimony was presented by the victim to the effect that defendant had engaged in multiple instances of sexual activity with her. Assuming that on retrial the jury will be instructed concerning which specific acts are alleged to be the basis for each count, a conviction of each of the offenses charged herein would not be error.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.