[S.F. No. 22864. In Bank. July 6, 1972.]

RACHEL MARCH et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO JUDICIAL
DISTRICT OF THE CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

## COUNSEL

Gladstein, Leonard, Patsey & Andersen, Norman Leonard and Richard Gladstein for Plaintiffs and Appellants.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, John T. Murphy, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

## OPINION

**PETERS, J.**—The seven petitioners were all tried together and each was convicted of violation of Penal Code sections 415 (disturbing the peace), 408 (illegal assembly), and 409 (failure to disperse). After the verdicts of conviction, the petitioners filed a timely application with the superior court alleging their indigency and requesting that the transcript of the trial be provided at public expense. This application was denied by the trial court without a hearing on the dual grounds that petitioners were not entitled to a transcript because they had not met their burden under *Magezis* v. *Municipal Court,* 3 Cal.3d 54 [88 Cal.Rptr. 713, 473 P.2d 353] and

because they were not indigent. We conclude that a new hearing on the motion is required since *Magezis* has been effectively overruled by the recent United States Supreme Court decision in *Mayer* v. *City of Chicago*, 404 U.S. 189 [30 L.Ed.2d 372, 92 S.Ct. 410], and since the trial court included irrelevant factors in its determination of nonindigency.

The seven petitioners were all arrested while attending a student rally at San Francisco State College. Each petitioner was charged with one count each of violations of sections 415, 408, and 409 of the Penal Code. At trial all seven petitioners were represented by a single public defender and were tried together, although they had requested a severance. The petitioners entered pleas of not guilty to all 21 counts. The trial lasted approximately four weeks, after which, petitioners were found guilty on all of the charged counts.

Petitioners' attorney on appeal did not represent them at trial. In their statement of intention to appeal, petitioners stated that they intended to appeal on 10 grounds, including that the evidence was insufficient to support the verdict and that certain erroneous rulings had been made by the court which were prejudicial to the defense.[1] In addition, petitioners applied for a transcript of the trial at the expense of the county, and in this regard filed verified statements regarding their financial status.[2] Petitioners'

---

[1]The other eight grounds for appeal included: (1) that sections 408, 409, and 415 of the Penal Code are unconstitutionally vague; (2) that sections 408, 409, and 415 of the Penal Code were unconstitutionally applied; (3) that the court should have granted petitioners' motion for continuance based on excessive and prejudicial pretrial publicity; (4) that the court should have granted petitioners' motion for separate appointment of counsel and severance; (5) that the court erred in its instructions to the jury; (6) that certain misconduct, prejudicial to the defendants, occurred during the trial; (7) that the court erred in denying petitioners' motion for a new trial; (8) that the court should not have denied petitioners' motion to acquit under section 1118.1 of the Penal Code.

Petitioners alleged that for purposes of presenting an adequate appeal on the above grounds, the following portions of the transcript will be necessary: (1) *voir dire* examination of the jurors; (2) all testimony of witnesses for the prosecution and defense; (3) all instructions; (4) all rulings on the evidence; (5) all motions of defendants; (6) sentencing.

[2]Petitioner Barnett did not file a statement regarding her financial status. Two of the petitioners declared that they had no present source of income, no cash on hand, and no assets in the form of property or automobiles. Two other petitioners declared that they also had no present source of income, no cash on hand, and that their only other asset was that each owned an automobile; one of these petitioners also claimed a $392.85 debt. Another petitioner declared that although she had no present source of income and no assets in the form of property or automobiles, she did have $1,000 cash on hand. The final petitioner claimed an income of $1,200 a year from a private scholarship, $2,900 cash on hand in an educational trust fund, and an automobile.

The total assets of all six petitioners filing statements consisted of income of $1,200 per year, a $2,900 trust fund for education, $1,000 bank account, and three automobiles. The total debts claimed were $392.85.

trial attorney filed a declaration alleging that a settled statement of the facts of the trial was unobtainable ". . . for the reasons that there were in excess of forty-five witnesses and the appealable issues are too numerous to define without a transcript."

The trial judge denied the motion for a free transcript on the dual grounds that the petitioners were not indigent and that they had not made a bona fide effort to reduce costs by using a settled statement. In determining that the petitioners were not indigent, the trial judge took judicial notice of the total trial record and concluded that ". . . most of the defendants are students not only capable of tapping enough resources to finance their education but also to finance this appeal, *including fine employability* on the part of each, . . ." (Italics added.) In addition, the judge noted that two of the women petitioners were married (one subsequent to the termination of the trial) and could therefore be assumed to have community assets out of which to meet the transcript costs. The denial of the motion was determined on the pleadings, without a hearing regarding the accuracy of the affidavits and without opposing affidavits by the state substantiating the trial court's assumptions as to earning capacity or community assets.

■ Although the United States Supreme Court has never held that states are required to provide appellate review, ". . . once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." (*Rinaldi* v. *Yeager,* 384 U.S. 305, 310 [16 L.Ed.2d 577, 581, 86 S.Ct. 1497].)

In *Griffin* v. *Illinois,* 351 U.S. 12, 19 [100 L.Ed. 891, 899, 76 S.Ct. 585], the Supreme Court held that "equal access" included the right to secure adequate appellate review, and that in those cases involving indigent defendants, where a transcript was essential to the appeal, it had to be provided at state expense. This holding rested on the ". . . constitutional guaranties of due process and equal protection both [of which] call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. . . . [¶] and . . . [p]lainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence . . . ." (*Griffin* v. *Illinois, supra,* 351 U.S. at pp. 17-18 [100 L.Ed. at p. 898].) The court concluded that there is a violation of equal protection where the effectiveness of a defendant's appeal depends on the amount of money he has.

Subsequently, the Supreme Court has repeatedly reasserted the indigent defendant's right on appeal to a free transcript or adequate substitute, at state expense (*Draper* v. *Washington,* 372 U.S. 487, 496 [9 L.Ed.2d

899, 905, 83 S.Ct. 774]; *Roberts* v. *LaVallee,* 389 U.S. 40, 42 [19 L.Ed. 2d 41, 43, 88 S.Ct. 194]; *Eskridge* v. *Washington Prison Bd.,* 357 U.S. 214, 216 [2 L.Ed.2d 1269, 1271, 78 S.Ct. 1061]), and has extended that right to indigent misdemeanants as well as felons (*Williams* v. *Oklahoma City,* 395 U.S. 458, 460 [23 L.Ed.2d 440, 442, 89 S.Ct. 1818]).[3]

■ Equal protection does not require that in every instance where there is an indigent appeal that the state must supply a verbatim transcript. (*Griffin* v. *Illinois, supra,* 351 U.S. at p. 20 [100 L.Ed. at p. 899].) Equal protection does require, however, that the state must afford the indigent defendant a " 'record of sufficient completeness' to permit proper consideration of [his] claims." (*Draper* v. *Washington, supra,* 372 U.S. at p. 499 [9 L.Ed.2d at p. 907] (quoting *Coppedge* v. *United States,* 369 U.S. 438, 446 [8 L.Ed.2d 21, 29, 82 S.Ct. 917]).)

What constitutes a "record of sufficient completeness" depends on the contentions being urged in the appeal. Sometimes a statement of the facts agreed to by both sides will be sufficient, and even when the contentions go to the rulings on evidence or its sufficiency, requiring access to a verbatim transcript, the transcript provided can be limited to the portions relevant to those issues. (*Draper* v. *Washington, supra,* 372 U.S. at pp. 495-496 [9 L.Ed.2d at pp. 905-906].) However, the state ". . . must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way. Moreover, *where the grounds of appeal,* as in this case, *make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds.*" (*Mayer* v. *City of Chicago, supra,* 404 U.S. at p. 195 [30 L.Ed.2d at pp. 378-379]; italics added.)

■ Under the rule announced in *Mayer,* as soon as an indigent appellant has made the requisite showing of a colorable need for a complete transcript, the burden switches to the state to show that an alternative such as a settled statement will suffice. Insofar as the language in *Magezis* v. *Municipal Court, supra,* 3 Cal.3d at p. 58 and in *Grimes* v. *Municipal Court,* 5 Cal.3d 643, 646 [97 Cal.Rptr. 9, 488 P.2d 169] requires a more

[3]As early as 1909 California, by statutory enactment (Pen. Code, § 1247, repealed 1927), guaranteed all defendants in felony cases, whether or not indigents, the right to those portions of a reporter's transcript which were pertinent to their appeal at state expense. When the appellate rule-making power was vested in the Judicial Council in 1927, this right was set forth in Rules of Court, rules 33 and 35. (*In re Paiva,* 31 Cal.2d 503, 508 [190 P.2d 604]; *People* v. *Smith,* 34 Cal.2d 449, 453 [211 P.2d 561].)

substantial showing by appellants than is required under *Mayer,* they are disapproved.

In *Mayer,* the contentions on appeal which were deemed to make out a colorable need for a complete transcript were that the evidence was insufficient for conviction and that the misconduct of the prosecutor denied defendant a fair trial. ■ In the instant case the contentions on appeal include, among several others, claims that the evidence was insufficient to support the verdict and that certain misconduct, prejudicial to the defendants, occurred during the trial. Therefore, in the instant case, petitioners had made the requisite showing, shifting the burden to the county to show that only a portion of the transcript or an alternative such as a settled statement would be sufficient for an effective appeal. Accordingly, petitioners had no burden to show that in addition they had made a bona fide effort to obtain a settled statement.

The alternate ground for denying petitioners' motion for a free transcript, that petitioners were not indigent, is also without merit.

■ Although there are no cases specifically establishing criteria by which the trial court is to determine indigency for purposes of providing transcripts at public expense, the same criteria governing applications to proceed in forma pauperis for purposes of eliminating filing fees are applicable. In order to present a prima facie showing of indigency, it is not necessary for the applicant to establish total destitution although he may be required to establish more than that the payment of the required fee would be burdensome or inconvenient. (*Ferguson* v. *Keays,* 4 Cal.3d 649, 658, fn. 8 [94 Cal.Rptr. 398, 484 P.2d 70].)

In *Earls* v. *Superior Court,* 6 Cal.3d 109, 114 [98 Cal.Rptr. 302, 490 P.2d 814], we held that ". . . whenever a motion to proceed in forma pauperis is supported by an affidavit sufficient on its face to show indigency the court must grant the motion unless it has good reason to doubt the truthfulness of the factual allegations in the affidavit, and in that event it may decide the matter on conflicting affidavits, or in unusual circumstances order a hearing for the purpose of inquiring into the matter."

■ If the affidavits present a prima facie showing of indigency, the motion must be granted unless the court has good reason to doubt the truthfulness of the allegations. If the court doubts the truthfulness of the allegations, it is then required to decide the matter on conflicting affidavits or, in the unusual case, to order a judicial hearing on the matter. It is imperative that these procedures be followed since they guarantee that a

denial of an appellant's motion will not be based on allegations to which he has not had the opportunity to respond.

We also stated in *Earls* that "[w]e know of no authority permitting a court to deny an application to proceed in forma pauperis upon the ground that, although the applicant is currently indigent, he may, over a period of months, succeed in accumulating the amount necessary to defray costs. . . . [¶] . . . [¶] *Indigents are entitled not merely to access to the courts but to timely access.* They may not be subjected to unreasonable delays in securing fundamental rights solely by reason of their poverty." *(Earls v. Superior Court, supra,* 6 Cal.3d at p. 117; italics added.) Telling an appellant that he can earn the necessary funds in the future to meet court costs is equivalent to telling an applicant that by saving he can eventually accumulate enough funds in the near future to meet court costs. Requiring either course of action unlawfully denies the indigent immediate access to the judicial process.

■ The relevant consideration in determining indigency is whether the petitioner's *current financial status* affords him equal access to the legal process. Such a determination cannot include an evaluation of the appellant's future earning potential or even his present potential had he chosen to employ himself in a more financially rewarding manner.

■ The affidavits filed by six petitioners in the instant action declare that they have only $1,000 in cash, with an addtional $2,900 in an educational trust fund, and only $1,200 per year as potential income among six people. Although the affidavits do not establish total destitution, they do establish that it would have been impossible for petitioners at that time to have obtained sufficient funds to purchase the transcript of a trial lasting four weeks. In no event could a determination of nonindigency be based on the trial court's presumption that each petitioner was capable of finding part time employment, or that a female defendant by marrying somehow acquires adequate assets to pay for transcripts. Under these circumstances, a finding of nonindigency was erroneous.

■ In actions involving multiple appellants, the fact that one appellant is financially capable of procuring a transcript at his own expense, does not affect the rights of those appellants who are adjudged indigent. The indigent appellant becomes no less entitled to an adequate appeal by the fact that his codefendant, whom he may not even have known before trial, is not indigent. This is especially true since the indigent appellant has no control over the decision of the nonindigent codefendant as to whether or not to purchase the transcript.

It would be equally inequitable to require the nonindigent appellant to

bear the entire cost of the transcript of a trial involving multiple defendants when, as in most cases, the prosecution and not the defendants determine whether the action will involve multiple defendants. Nonindigent appellants should, however, be assessed their proportionate share of the transcript cost. If in the instant action, petitioner Barnett, who did not file a financial statement, chooses to remain a party to the appeal, she should be assessed her proportionate share of the transcript cost.

Petitioners must be afforded a new hearing at which time the state must be given the opportunity to show either that an alternative to a transcript would be sufficient to provide petitioners with an adequate appeal or that petitioners are not indigent. If neither showing can be made, petitioners must be afforded a transcript at public expense.

On rehearing, the trial court is directed to focus the inquiry as to indigency on petitioners' financial status at the time of their initial request for a transcript, and not on petitioners' financial status as of the time of rehearing.

In the analogous situation of an indigent wrongfully denied counsel at his original trial on the ground that he had sufficient funds to obtain counsel, we held that in determining the question of indigency on appeal, events which take place subsequent to the time in issue are irrelevant (*In re Smiley,* 66 Cal.2d 606, 621 [58 Cal.Rptr. 579, 427 P.2d 179]). **(10)** A determination of a defendant's ability to pay for adequate access to the judicial process cannot be based on events which take place subsequent to the time the initial request based on indigency was made. To hold otherwise would allow the state to erroneously deny such relief, precluding petitioners from perfecting their appeal until such time as petitioners are ineligible for such relief and then assert that ineligibility. The result of such a procedure is to subject petitioners to unreasonable delays in securing a fundamental right solely because of their poverty in much the same manner as directing them to gradually save the requisite funds. To the extent that *Colbert* v. *Municipal Court* (24 Cal.App.3d 497, 500 [101 Cal.Rptr. 283]) is contrary to the views expressed herein or in *Smiley,* it is disapproved.[4]

---

[4]In *Colbert,* the Court of Appeal relied on Justice Blackmun's concurring opinion in *Mayer* v. *City of Chicago, supra.* 404 U.S. at p. 201 [30 L.Ed.2d at p. 383], which asserted that changes in petitioner's financial status while the issue of his right to a transcript was on appeal should be considered on remand. However, this suggested procedure was not affirmed by any of the other justices.

The judgment is reversed and the case remanded to the superior court with directions to issue a writ of mandate directing the municipal court to reconsider petitioners' motion for a transcript at public expense in accordance with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

On August 2, 1972, the judgment was modified to read as printed above.