[Crim. No. 20065. Jan. 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MICHAEL GASTON, Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Jonathan B. Steiner, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BIRD, C. J.**—Appellant, James Michael Gaston, petitioned this court for a hearing following the Court of Appeal's denial of his motions to include in the record on appeal (1) a reporter's transcript of the closing arguments of both prosecutor and defense counsel and (2) a transcription of a tape recording which was played, but not stenographically recorded, during appellant's court trial. The petition for hearing was granted, and the cause was transferred to this court.

### I.

Following his conviction for second degree murder (Pen. Code, §§ 187, 189), appellant filed a notice of appeal, and the Court of Appeal appointed counsel to represent him. Appellate counsel moved to include in the record on appeal a reporter's transcript of the closing arguments and a transcription of the tape recording, which had been played during the trial. Appellant contended, pursuant to California Rules of Court, rule 12(a),[1] that the closing arguments were necessary, since they might

---

[1]California Rules of Court, rule 12(a), provides:
"On suggestion of any party or on its own motion, the reviewing court, on such terms

reveal (1) the prejudicial effect of the admission in evidence of allegedly improper testimony by a deputy sheriff; (2) the basis for the trial court's determination that appellant harbored malice, since the trial record contained uncontradicted testimony by a psychiatrist, corroborated by appellant, that he did not harbor malice; (3) the existence of and the basis for an argument by the prosecutor that appellant had killed because he had "had enough" of the victim; and (4) any "other common errors" in the prosecutor's arguments which "often require reversal."

Appellate counsel alleged that he was unable to provide a more specific factual basis for augmentation, because appellant's trial counsel "[did] not have an adequate memory of the trial." Appellate counsel argued that even without a more specific showing, he had complied with the requirements of rule 12(a) and the standard enunciated in *People* v. *Hill* (1967) 67 Cal.2d 105, 122-125 [60 Cal.Rptr. 234, 429 P.2d 586]. Alternatively, he contended that a denial of his motion for augmentation would violate appellant's constitutional rights to equal protection of the law and to due process in that a person of means could afford a transcript and, thereby, acquire the necessary information to support such a motion. Furthermore, without a transcript appellant would be denied the effective assistance of counsel, he argued, since a transcript is essential for ascertaining whether errors were committed during the course of trial.

A transcript of the tape recording was necessary, appellate counsel contended, because rule 33(a)[2] requires that "all oral proceedings of the

---

as it deems proper, may order that the original or a copy of a paper or record on file or lodged with the superior court .be transmitted to it, or that portions of the oral proceedings be transcribed, certified and transmitted to it, or that an agreed or settled statement of portions of the oral proceedings be prepared and transmitted to it; and when so-transmitted they shall be deemed a part of the record on appeal."

All references in this opinion to rules are to the California Rules of Court.

[2]Rule 33(a) provides:

"(a) [Normal record] If the appeal is taken by the defendant from a judgment of conviction, or if the appeal is taken by the People from an order granting a motion for a new trial, the record on appeal, except as hereinafter stated, shall include the following (which shall constitute the normal record):

"(1) A clerk's transcript, containing copies of (a) the notice of appeal, any certificate of probable cause executed and filed by the court, and any request for additional record and any order made pursuant thereto; (b) the indictment, information or accusation; (c) any demurrer; (d) any motion for a new trial; (e) all minutes of the court relating to the action; (f) the verdict; (g) the judgment or order appealed from; (h) written instructions given or refused indicating on each instruction the party requesting it.

"(2) A reporter's transcript of (a) the oral proceedings taken on the trial of the cause, including jury instructions given which cannot be copied by the clerk, and proceedings at

trial of the cause" be made a part of the appellate record. The tape, which contained the voices of the deceased victim and other persons, had been admitted as evidence of the violent, abusive character of the victim. Both counsel stipulated at trial that "the reporter need not try to transcribe the tape . . . ." The tape recording was received in evidence as an exhibit, played, and its contents referred to throughout the course of the trial. Therefore, appellate counsel argued, it became part of the trial record and should have been transcribed for the convenience of the court and the litigants.

Appellant's motions were opposed on several grounds. As to the closing arguments, the Attorney General contended that appellant had not made a proper showing for augmentation, since he had failed to establish (1) that the questioned testimony of the deputy sheriff was erroneously admitted; (2) that trial counsel had objected to the purported misstatement by the prosecution concerning appellant's motive for committing the offense;[3] and (3) that he had sufficiently specified any errors which had allegedly occurred. As to the tape recording, the Attorney General argued that appellant was precluded from requesting the transcription by his trial counsel's stipulation, even though the Court of Appeal on its own motion could call up the tape as an exhibit pursuant to rules 10(c)[4] and 33(a)(3).

The Court of Appeal denied appellant's motions, and this petition ensued.

## II.

When an appeal is taken by a defendant from a judgment of conviction in the superior court, the "normal" record includes, in

---

the time of sentencing or granting of probation; and (b) oral proceedings on the hearing of the motion for a new trial, and on the entry of any plea of guilty or nolo contendere; the transcript shall normally exclude proceedings on the voir dire examination of jurors, opening statements, and arguments to the jury.

"(3) To be transmitted as originals upon request by the reviewing court as provided in rule 10: any exhibit admitted in evidence or rejected."

[3]The Attorney General conceded that failure to object would not preclude appellate review of the issue of prosecutorial misconduct if the case were closely balanced or if the error could not be corrected by admonition. He contended, however, that "the case against appellant [was] not closely balanced" and that it was unlikely the trial judge would have been influenced by such "misconduct."

[4]Rule 10(c) provides in pertinent part: "The reviewing court at any time may request that any original exhibits be transmitted to it by the clerk of the superior court. . . ."

addition to a clerk's transcript, a reporter's transcript which contains the "oral proceedings taken on the trial of the cause"; "proceedings at the time of sentencing or granting of probation"; and "oral proceedings on the hearing of the motion for a new trial, and on the entry of any plea of guilty or nolo contendere." (Rule 33(a)(2).) The reporter's transcript prepared pursuant to this rule "shall normally exclude proceedings on the voir dire examination of jurors, opening statements, and arguments to the jury." (*Ibid.*)

■ Rule 12(a) outlines the procedures to be followed if a party desires to augment the record at the appellate level to include matters outside the "normal" record. "On suggestion of any party or on its own motion, the reviewing court, on such terms as it deems proper, may order that . . . portions of the oral proceedings be transcribed, certified and transmitted to it . . . and when so transmitted they shall be deemed a part of the record on appeal." (Rule 12(a).) In *Hill,* this court considered what showing is required for augmentation under rule 12(a) and concluded that "[a]ll that is required of [the moving party] is that he signify with some certainty how materials not included in the normal transcript may be useful to him on appeal." (*People* v. *Hill, supra,* 67 Cal.2d 105, 124.)

Much confusion has arisen over the meaning of this language in *Hill.* The Attorney General and apparently some of the Courts of Appeal (see, e.g., *People* v. *Crume* (1976) 61 Cal.App.3d 803, 817 [132 Cal.Rptr. 577]) have interpreted *Hill* erroneously to require that before augmentation may be granted, the moving party must articulate specific errors or facts which would be found in the requested transcripts. *Hill* is thus misread to require the moving party to "signify with some certainty [*that*] materials not included in the normal transcript may be useful to him on appeal." The language of the opinion, however, states that the litigant need only establish with some certainty *how* the materials he requests may be useful to him on appeal. The showing of "some certainty" must be made as to the *manner* in which the materials may be useful, not as to the contents of the materials themselves.

The correct interpretation of rule 12(a) as set forth in *Hill* is consistent with the intent of the Judicial Council in adopting this rule. Shortly after the rules were promulgated,[5] B. E. Witkin, the Judicial Council's

---

[5]The portion of rule 12(a) quoted above, has not been amended since its adoption.

draftsperson of the Rules on Appeal, wrote that "the rules [regarding the augmentation procedure] impliedly call for great liberality in its exercise. Not only is the doctrine of liberal construction stated in Rule 53(a) [6] an appropriate guide, but it would seem that the successful operation of all the rules dealing with short records depends upon a free permissive use of the augmentation procedure. . . ." (Witkin, *New California Rules on Appeal,* part one, (1944) 17 So.Cal.L.Rev. 79, 131.)

The rule that a statement of underlying facts is not a prerequisite to augmentation is a sound one. The Judicial Council recognized that even where the trial counsel intended to remain the attorney on appeal, there would be "difficulty [in] 'designating' portions of the record of a trial from memory" to be included in the record on appeal. (Witkin, *New California Rules on Appeal,* part two, (1944) 17 So.Cal.L.Rev. 232, 276; see also, part one, *supra,* at pp. 101-102.) The difficulty is compounded when a new attorney represents a party on appeal. As one commentator has noted, "[r]ecollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript. [7] Particularly is this true of questions relating to evidence or to the judge's charge; and it may also apply to many other types of questions. Moreover, the actual record (if appellate counsel could have it to inspect) might disclose issues substantial enough to constitute probable or possible 'plain error,' even though trial counsel was not aware of their existence . . . . In short, a conscientious counsel freshly entering the case at the appellate stage normally is likely to conclude that a full or partial transcript of the trial proceedings will be indispensable if the requisite 'dependable record' is to be obtained as a basis for evaluating the case." (Boskey, *The Right to Counsel in Appellate Proceedings* (1961) 45 Minn.L.Rev. 783, 793.)[8]

---

[6]Former rule 53(a) (now contained in rule 53) provided in part that the Rules of Court "shall be liberally construed to secure the just and speedy determination of appeals . . . ."

[7]Essentially, a new counsel for an indigent on appeal would be confronted by a "Catch-22" dilemma if the rule were as suggested by the concurring and dissenting opinion: in order to know whether arguable issues exist outside the normal record, a conscientious counsel would need to see a transcript of those proceedings; but in order to see a transcript of those proceedings, counsel must be able to allege that arguable errors exist. This was the type of concern which underlay the Judicial Council's promulgation of rules 12(a) and 33. This court is, of course, bound by those rules insofar as they do not conflict with legislative or constitutional law. Whether this court might have preferred a different rule is not—and cannot lawfully be—the issue here.

[8]See also *Hardy* v. *United States* (1964) 375 U.S. 277 [11 L.Ed.2d 331, 84 S.Ct. 424] (new counsel for an indigent on appeal is entitled to full verbatim trial transcripts in

■ In the case now before this court, appellant has more than met the standard of *Hill* with respect to the closing arguments of both trial counsel. Appellant has shown with "some certainty" the manner in which material in the transcript of the arguments may be useful to him on appeal. The arguments may well be probative of prejudice flowing from the disputed testimony of the deputy sheriff. (Cf. *People* v. *Powell* (1967) 67 Cal.2d 32, 55-56 [59 Cal.Rptr. 817, 429 P.2d 137].) They may reveal how the evidence adduced at trial may have been erroneously used to establish the element of malice, in light of appellant's contention that there was uncontradicted testimony of a psychiatrist and appellant to the effect that appellant did not harbor malice. The transcripts may also disclose whether the prosecutor made the statement regarding motive which appellant contends constituted misconduct, what supporting evidence the prosecutor relied on in making such a statement, and what degree of prejudice was caused thereby. (Cf. *People* v. *Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564].) Each of these showings adequately supported appellant's motion for augmentation.

It is not necessary that appellant point out any statements of trial counsel in order to justify his motion. It is sufficient that appellant show "with some certainty how [the final arguments] *may* be useful to him." (*People* v. *Hill, supra,* 67 Cal.2d at p. 124, italics added.) This he has done.[9]

■ ■ The assertion of the Attorney General that the testimony of the deputy sheriff was properly admitted goes to the substantive merits of the appeal rather than to the validity of the motion to augment.[10] The motion to augment was designed to be a relatively routine proceeding (see Witkin, part one, *supra,* 17 So.Cal.L.Rev. at p. 131), not a vehicle for deciding substantive issues on their merits.

---

federal criminal cases). In interpreting the federal Constitution, the decisions of the United States Supreme Court have "consistently recognized the value to [an indigent] defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." (*Britt* v. *North Carolina* (1971) 404 U.S. 226, 228 [30 L.Ed.2d 400, 404, 92 S.Ct. 431].)

[9]Since appellant's motion meets the requirements of rule 12(a) as set forth in *Hill,* this court need not consider his additional arguments that denial of his motion to augment violated equal protection and due process principles and infringed upon his right to the effective assistance of counsel on appeal.

[10]In ruling on a motion to augment the record on appeal, a reviewing court should not normally resolve underlying substantive issues. Rather, these issues should be decided only after full briefing and oral argument on the complete record. Accordingly, this court does not now consider the admissibility of the testimony of the deputy sheriff.

Likewise, the Attorney General's contentions that trial counsel failed to object to the alleged prosecutorial misconduct, that the case was not a close one, and that the error, if any, was harmless (see fn. 3, *ante*), refer to substantive issues which can be properly decided only after a complete record is filed, briefs submitted, and oral argument held.[11]

▮ A separate issue is presented by appellant's motion to include in the record on appeal a transcription of the tape recording. Appellant contends that the playing of the tape recording was part of the "oral proceedings taken on the trial of the cause" and that, therefore, rule 33(a)(2) required a transcription of the contents to be included as part of the "normal" record. While appellant is correct that the playing of the tape recording was part of the "oral proceedings" (*People* v. *Harris* (1962) 199 Cal.App.2d 474, 475 [18 Cal.Rptr. 708]), his trial counsel stipulated that a stenographic record of the playing of the tape did not have to be made. This stipulation constituted a waiver preventing the invocation of the mandatory provisions of rule 33(a)(2).

▮ It is nevertheless true that some record of what was heard by the trier of fact when the tape recording was played is relevant to assess whether the evidence against appellant was insufficient to establish malice and whether other alleged trial errors were prejudicial. Although appellant may not rely on rule 33(a)(2) to obtain a transcription of the tape recording, the reviewing court is not precluded from including the tape itself as part of the record on appeal. Under rule 33(a)(3), the "normal" record includes "upon request by the reviewing court . . . any exhibit admitted in evidence or rejected." Since the tape itself was an "exhibit admitted in evidence" at trial and is relevant to the appeal, it should be included in the record on appeal. A transcription, however, is not required by rule 33(a)(3).

The motion for augmentation of the record on appeal to include a reporter's transcript of closing arguments of both trial counsel is granted. The motion for a transcription of the tape recording is denied. The tape exhibit is ordered included in the record on appeal.

This cause is retransferred to the Court of Appeal for further proceedings and for decision on the merits.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

---

[11]To the extent it required some statement of underlying facts as a prerequisite to augmentation, *People* v. *Crume, supra,* 61 Cal.App.3d 803, is disapproved.

**RICHARDSON, J.**—I concur in the judgment and in that portion of the majority opinion which denied appellant augmentation of the record with a transcription of a tape recording which was played during his trial but which directed that the tape recording itself be included as an exhibit on appeal.

However, I am unable to join in that portion of the opinion which approves augmentation of the record with a transcript of closing argument by counsel.

I believe that the majority improperly reduces the showing which has previously been required of an indigent appellant who requests augmentation of the record on appeal in a criminal case. As the opinion properly observes, the applicable test regarding augmentation of the record was described by us in *People* v. *Hill* (1967) 67 Cal.2d 105, 124 [60 Cal.Rptr. 234, 429 P.2d 586], in the following words: "All that is required . . . is that [the defendant] signify with *some* certainty how materials not included in the normal transcript may be useful to him on appeal." (P. 124, italics added.) We required that defendant should designate "with . . . a modicum of specificity . . . any errors which transcript of argument would help him prove . . . . [Citation.]" (*Id.,* at p. 123, fn. 11.) In *Hill* we held that defendant's broad conclusory allegation that transcripts were needed "because of errors or mistakes" constituted an insufficient showing of a need for augmentation. Reading the case as a whole, I believe that *Hill* stands for the proposition that before augmentation of the record is ordered, defendant must make some colorable showing of need for a complete transcript. (Cf. *March* v. *Municipal Court* (1972) 7 Cal.3d 422, 428 [102 Cal.Rptr. 597, 498 P.2d 437, 66 A.L.R.3d 945].)

By focusing on selected language in *Hill,* the majority unduly expands the principles of *Hill* and fashions a standard so lax as to constitute virtually no test at all. The majority now will require only that defendant assert how a complete transcript *might* be useful to him. Under the majority's test, the requisite showing would be made by any speculative, conclusory allegation that, for example, an augmented transcript *might* provide evidence of prosecutorial misconduct or *might* disclose that jury instructions were misread. It seems to me self-evident that such showings would be no more probative of possible error than the conclusory allegations of "need" or "error" rejected in *Hill.* It is further evident that the practical consequences of the majority holding will differ little, if at all, from those which would have followed from the adoption of the test which we rejected in *Hill.* It would be a particularly unimaginative or

inept attorney who could not conceive of some possible benefit which a transcript of jury instructions or closing argument *might* provide.

It seems to me that the practical results of the majority's ruling is that augmentation of the record will be routinely granted, at substantial expense to the taxpayers of the state and with subsequent delays in the processing of appeals. It is readily apparent that the majority view is not consistent with the California Rules of Court, because rule 33(a)(2) specifically provides that the reporter's transcript on appeal "shall normally exclude proceedings on the voir dire examination of jurors, opening statements, and arguments to the jury."

In accordance with the general tenor of rules 12(a) and 33(a)(2) and *People* v. *Hill, supra,* I respectfully suggest that before augmentation of the record is granted, it is not unreasonable to require that the moving party set forth some facts indicating a reasonable possibility that error will be revealed in the augmented record. It is not too much to require that a defendant designate, in at least summary fashion, what he expects to find and something of what he knows, remembers, or suspects the requested record may reveal by way of error. Such a standard does not necessarily require that defendant articulate specific facts which will be found in the requested transcript, but rather does require something more substantial than the merest speculation. While this test would not be amenable to mechanical application, its augmentation would rest in the sound judgment and discretion of the appellate courts, which it seems to me is clearly contemplated by present rule 12(a) providing that "the reviewing court, *on such terms as it deems proper,* may order that . . . portions of the oral proceedings be transcribed . . . and transmitted . . . ." (Italics added.)

I conclude that appellant, in the matter before us, under a reasonable interpretation of *Hill,* made a sufficient showing to justify augmentation of the record. Appellant contends that a transcript of closing arguments is necessary to determine (1) the prejudicial effect of the admission in evidence of allegedly improper testimony by a deputy sheriff; (2) the basis for the trial court's determination that appellant harbored malice (the trial record contained uncontradicted testimony by a psychiatrist that he did *not* harbor malice); and (3) the existence of, and the basis for, an argument by the prosecutor that appellant had killed because he had "had enough" of the victim. Defendant has alleged with sufficient specificity what he expects to find in the record and why he believes the record will be helpful. Indeed, I suggest that the foregoing showing

furnishes a good example of a proper demonstration of need for an augmented transcript. Accordingly, I concur in the judgment.

Clark, J., concurred.