David Lee SCOTT *v.* STATE of Arkansas

CA CR 04-922                                          229 S.W.3d 578

Court of Appeals of Arkansas
Opinion delivered February 22, 2006

*DeeNita D. Moak*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. On April 29, 2004, David Lee Scott was tried for aggravated robbery before the bench in the Faulkner County Circuit Court. He was convicted and sentenced to twenty years' imprisonment in the Arkansas Department of Correction. He now appeals, contending that the trial court erred in finding that he was not indigent and "in failing to provide counsel" to represent him. We hold that the trial court abused its discretion by

determining non–indigency and granting the public defender's motion to be relieved as counsel on the basis of Scott's posting bond. Therefore, we reverse and remand for a new trial.

The crime precipitating Scott's arrest was the March 20, 2003, nighttime robbery of a pizza deliveryman at an apartment complex in Conway, Arkansas. Scott was implicated that night after the arrests of four other suspects. He was arrested in the early morning of March 21 and, like the others, was charged with aggravated robbery. In the first appearance before the trial court, on the day of Scott's arrest, he and the others charged were informed of their rights as defendants in a criminal case. The court stated:

> We'll talk about what you're charged with, the issue of bond, whether or not you're entitled to the services of the public defender, and give you a court date. . . .

> You have the right to an attorney. If you cannot afford an attorney, one will be appointed for you by the Court at no cost. Does everybody understand that?

The court set Scott's bond at $50,000, and Scott inquired about the possibility of getting a sheriff's bond. The court replied, "I'll leave that up to the sheriff. I've approved you for the public defender."[1]

Scott did not make his bond initially and was jailed. Public defender Karen Walker Knight represented him at the arraignment hearing on April 7, 2003, and the court accepted Scott's plea of not guilty. September 16 and 29, 2003, were set as dates for a pretrial hearing and trial. Knight requested that bond be reduced to $20,000, informing the court of her understanding that it had been set at $40,000. The trial court, agreeing with the State that bond

---

[1] The affidavit of indigency filed with the court on March 21, 2003, is a printed form divided into two parts: one for the defendant's financial information and the other for a spouse. Handwritten answers assert that Scott had no employer, that his sole expense was "Auto Insurance $140$" [sic], and that his only personal property was an '86 Cadillac valued at $300. Nothing is written in the blanks for his take-home pay, income from other sources, SSI, AFDC, social security disability, or "other." Despite a declaration that there was no spouse, $690 is shown as the spouse's monthly SSI.

should not be reduced, left it at $40,000.[2] On April 15, 2003, Knight filed a motion for discovery and a demand for speedy trial. On July 2, 2003, the public defender's office filed a motion to be relieved as counsel, setting forth the following:

> 1. Public Defender . . . was appointed to represent the Defendant, David L. Scott, in the above matter on April 7, 2003.
>
> 2. The Defendant's bond was set at $40,000.00.
>
> 3. The Defendant posted said bond on June 5, 2003.
>
> 4. Due to the lack of indigency, the Public Defender Office respectfully requests to be relieved as counsel for the defendant.

At the pretrial hearing on September 16, 2003, the following exchange transpired between the trial court and Robert L. Thacker of the public defender's office:

> MR. THACKER: Your Honor, this case is another one where the public defender has filed a motion to be relieved on the basis of the information we've received. Mr. Scott has apparently posted a bond in the amount of forty thousand dollars. So, we are moving to be relieved, on that basis. He showed me a copy of the bond, your Honor. I'll let you review, also. Apparently, he only paid part of the premium and was paying out the balance on it.
>
> THE COURT: At this point in time, I am going to find that you're not indigent. When you make a forty thousand dollar bond, I think you have the ability to hire an attorney. So, therefore, I'm going to leave you on for September 29th. You need to be back here with your attorney on that date, telling me who that attorney is.

On September 29, 2003, Scott appeared for trial and the court asked him to name his attorney. Scott replied, "I don't have one, sir. I haven't tried to hire one. I ain't had the money." The

---

[2] The record confirms that bond was set at $50,000 in Scott's initial appearance of March 2003 and that the trial court again referred to bond in this amount at a pretrial hearing in March 2004. Interim proceedings such as the arraignment hearing refer to a bond of $40,000. The parties on appeal do not address this discrepancy, and its resolution is immaterial to the issue before us.

court instructed Scott that he needed to hire "somebody." The court stated that it would allow Scott some time, and a pretrial hearing was set for February 10, 2004.

At the pretrial hearing in February, Scott told the court that he had not tried to hire an attorney "besides the past." He said that he had talked to George Stephens and John Purtle but had not hired them. Responding to questions by the court, Scott answered that he was not employed and was living with his sister. The court stated:

> You need to hire an attorney. You bonded out; your bond was forty thousand dollars. That's not a small bond to make. You need to hire somebody. You're telling me, today, you've not even really attempted to hire anybody, you really haven't talked to anybody, kind of talked to George Stephens and John Purtle, but you really haven't, so be back here March 1, and we're going to set your trial sometime in March.

In the March 1 hearing Scott told the court that he had no attorney; he said that he had tried to hire George Stephens about three weeks earlier but was not able to afford him. The following dialogue occurred:

> THE COURT: Where are you working . . .?
>
> MR. SCOTT: Nowhere. I stay at home with my sister. She is feeding me. She is taking care of all the bills and everything. I walk to get around. I am looking for a job, but I mean, I'm out on a $50,000 bond. I have to pay that, too. I mean, it's hard to try to pay that and try to pay for a lawyer at the same time.
>
> THE COURT: Why is that a problem if you can afford a $50,000 bond? There's a strong presumption that you're not indigent.
>
> MR. SCOTT: I'm still paying on it.
>
> THE COURT: I understand that. I guess, Ms. Knight, what I would ask for you is to consult with Mr. Scott and see if he wants a jury trial. Review the file and see if everything's ready to go.

. . . .

THE COURT: If you'll have a seat, Mr. Scott, I'll have Ms. Knight visit with you about a jury trial/bench trial. What I'm gonna do though — you have the ability to represent yourself, and I'm gonna let you represent yourself. If we end up going to trial, I probably will appoint Ms. Knight to sit second chair and assist you, so you need to visit with her and talk about what's getting ready to happen.

Knight informed the court that she had explained to Scott the difference between jury and bench trials, and that he waived a jury trial. The prosecution informed the court that it had made an offer to reduce the charge to robbery with a twenty-year sentence, which would avoid the "seventy percent rule" associated with aggravated robbery. Scott told the court that he understood the offer, and the court noted that the offer was waived. The court ascertained Scott's ability to represent himself, asked whether he understood that he had been found not to be indigent, and further instructed him:

> I guess the easiest way I can put this is you're going to a gun fight without a gun. He's [the prosecutor] got one. You don't. There'll be certain rules and regulations you'll have to follow. I am gonna appoint Ms. Knight as second chair. She will assist you, but she will by no means be your attorney. She won't be the lead attorney. Give you some advice if you ask for it, but she is not in charge of your case. You are in charge of your case. Do you understand that?

The court set March 31 as the date for trial.

On March 31, 2004, Scott told the trial court that he still had no attorney and had talked to no one except John Purtle. The court asked if Scott was ready for trial; he responded that he was "ready to get it over with" despite not really looking over his discovery motion as well as he should have, and he told the court that he had no witnesses.

Knight addressed the court:

> Your Honor, for the record, I have been appointed to assist Mr. Scott as stand-by counsel. . . . He also informed me that his sister had helped him do this bond, and when I asked why his sister's not helped him get an attorney, he explained to me that they are still trying.

Knight informed the court that, when the public defender was relieved as counsel, its office handed Scott the discovery materials that it had received, but her only contact with him since that date had been in open court. She stated that she had presented the prosecutor's offer to him and that he had refused it.

Knight stated that Scott told her that his sister had helped him make his bond, that $1500 was paid "up front," and that the rest was paid off. Knight reminded the court that Scott had been out of jail since June, had no job, and had made no attempts to hire Mr. Purtle. She said that Scott had advised her that his sisters were attempting to help him hire an attorney. Knight concluded, "In my opinion, as the Court has ruled, he's not indigent. He has the means. He has the ability to work."

The court inquired whether the State was ready for trial, and the prosecutor responded:

> Judge, I have witnesses here. Your Honor, I by no means wish to dispute [the] Court's prior ruling. The Court has relieved the public defender, because he's made a bond. Judge, I don't know what's ultimately gonna become of that. I have serious reservations with the Court relieving him of public defender because he made a $40,000 bond. And that was the testimony. He made a $40,000 bond, and he was relieved. I think, Judge, when the Court has heard that he has not posted that bond, it's been made by his sister, I think that raises some concerns and alarms in my mind about any conviction standing any constitutional challenges.

The court observed that the State was ready for trial, but, noting Scott's concern that he had not reviewed discovery matters fully, granted a continuance until April 29 on "the defense motion."

At trial on April 29, 2004, Scott defended himself pro se and Knight sat beside him as "second-chair." Scott asked the court if he had the right to a jury trial but was informed that he had previously waived that right. At the conclusion of the bench trial, he was found guilty and was sentenced to the twenty-year term of imprisonment.

On appeal, we do not reverse the trial court's ruling as to indigency *vel non*, absent an abuse of discretion. *Hancock v. State*, 26 Ark. App. 107, 760 S.W.2d 391 (1988). A defendant's ability to post bond, although a factor that can be considered in a determination of indigency, is not conclusive evidence of non-indigency.

*Id.* at 109, 760 S.W.2d at 392. No showing of prejudice is necessary when a trial court erroneously denies appointment of counsel altogether because prejudice to the defendant is presumed. *Kincade v. State,* 303 Ark. 331, 796 S.W.2d 580 (1990).

In *Hill v. State,* 304 Ark. 348, 802 S.W.2d 144 (1991), the trial court declared that the defendant, formerly represented by retained counsel at trial and for filing his notice of appeal, was not indigent for purposes of appeal because he had social-security income and an interest in real property, he had made bond, and he had made no effort to raise money for the appeal. Remanding the matter to the trial court for a second evidentiary hearing and findings of fact, the supreme court wrote:

> Some weight may be given to whether appellant himself paid the cost of an appeal bond, but the state cannot force an appellant to choose between posting bond and being able to obtain counsel and pay the cost of an appeal. *See People v. Eggers,* 27 Ill.2d 85, 188 N.E.2d 30 (1963). The ability of bystanders such as friends and family members to post bond or assist with expenses is not a factor in determining the appellant's indigency since indigency of the appellant does not depend on the financial position of his family and friends. Bystanders have no obligation to the state.

*Id.* at 351, 802 S.W.2d at 145.[3]

Here, the public defender moved to be relieved as counsel due to Scott's lack of indigency solely on the basis of his posting

---

[3] The *Hill* court listed other factors to be considered in determinations of indigency:

> While there is no brightline test for indigency, which is a mixed question of fact and law, some of the factors to be considered are: (1) income from employment and governmental programs such as social security and unemployment benefits; (2) money on deposit; (3) ownership of real and personal property; (4) total indebtedness and expense; (5) the number of persons dependent on the appellant for support; (6) the cost of the transcript on appeal; and (7) the likely fee of retained counsel for the appeal. *See* W. LaFave and J. Israel, 2 *Criminal Procedure* §§ 11.2(e) (1984). This court has also considered whether the able-bodied appellant who is educated and capable of working has made any attempt to find employment while free on bond. *Toomer [v. State],* 263 Ark. 595, 566 S.W.2d 393 [1978]. Ablebodiness and the level of education, however, must not be given undue weight since the ability to obtain employment after conviction may be limited. *See March v. Municipal Court,* 7 Cal. 3d 422, 102 Cal. Rptr. 597, 498 P.2d 437 (1972).

304 Ark. at 350-51, 802 S.W.2d at 145.

bond. In granting the motion, the trial court ruled that "[w]hen you make a forty thousand dollar bond, I think you have the ability to hire an attorney." The court repeated this viewpoint at later hearings, observing that Scott should hire an attorney because he had made bond of $40,000. At the final pre-trial hearing, the court observed that payment of a $50,000 bond created a strong presumption of non-indigency. And on the day of trial, the trial court rejected the prosecutor's concerns that the court relieved Scott of his public defender because he had made bond that had been paid by his sister.

■ Under *Hill v. State, supra,* an appellant cannot be forced to choose between posting bond and being able to obtain counsel, and the ability of family members to post bond or assist with expenses is not a factor in a determination of the appellant's indigency. We hold that the trial court abused its discretion in determining that Scott was not indigent merely because he or his sisters were able to make bond and obtain his release from jail before trial.

Reversed and remanded for re-trial.

HART and NEAL, JJ., agree.