Filed 9/20/23  P. v. Schindler CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079900 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD277587) |
| JOHN CONRAD SCHINDLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed in part, vacated in part.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Heather M. Clark and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After pleading guilty to robbery and admitting a serious felony prior conviction, John Conrad Schindler was sentenced to a seven-year prison sentence with execution of that sentence suspended pending his successful completion of a three-year period of formal probation. The trial court found he violated probation based on evidence he had been convicted of misdemeanor trespass and had made unlawful threats against others. The court revoked his probation and ordered execution of the suspended sentence. Schindler asserts we must reverse the judgment because (1) the trial court violated his federal constitutional right to due process by admitting hearsay testimony relating to his alleged criminal threats without making the required "good cause" determination and the error was prejudicial; and (2) there was insufficient evidence to support the court's finding he made unlawful threats and committed a trespass, including because his conviction for trespass had since been reversed by the Appellate Division of the Superior Court. We vacate the trial court's finding of a probation violation based on the subsequently reversed trespass conviction. We affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2019, Schindler pled guilty to robbery (Pen. Code,[1] § 211) and admitted he had a serious felony prior conviction (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c).) On September 25, the trial court imposed but suspended execution of a seven-year prison sentence (ESS), consisting of the low term of two years for the robbery, plus a consecutive sentence of five years for the serious felony prior, pending successful completion of a three-

_____

[1]    All further undesignated statutory references are to the Penal Code.

year grant of formal probation. The terms and conditions of his probation included that he obey all laws (condition 6a) and that he "not unlawfully use force, threats, or violence on another person" (condition 10a).

On February 21, 2020, Schindler's probation was summarily revoked based on the probation department's report that he was not in compliance with his supervision and had been re-arrested. On August 28, probation was formally revoked when Schindler admitted he violated probation by possessing a controlled substance. Schindler remained in custody until February 11, 2021, at which time he was ordered released and reinstated on probation with the same terms and conditions. The seven-year ESS remained.

On October 14, 2021, the probation department filed a report that Schindler was again not in compliance with his supervision and had been re-arrested on October 10 for domestic battery against his girlfriend (§ 243, subd. (e)(1)). The report alleged Schindler violated condition 6a based on that arrest, and condition 10a based on three occasions when he made unlawful threats against others, specifically: (1) J.W., a Child Welfare Services worker, and his minor daughter's caregiver; (2) staff at Tender Loving Mercy, a residential treatment program; and (3) staff at Veterans Village of San Diego (Veterans Village), another residential treatment program.

A formal probation violation hearing was held on December 15, 2021, at which J.W., Megan Ripley (a substance abuse counselor at Veterans Village), Linnae Fischer (Schindler's probation officer), and Schindler testified. The trial court also received proof that a jury acquitted Schindler of domestic battery (§ 243, subd. (e)) but convicted him of trespass (§ 602, subd. (m)), in November 2021. The testimony at the hearing established the following.

3

J.W. is a social worker with Child Welfare Services. (It appears from the record that she was the social worker assigned to a juvenile dependency case involving Schindler's minor daughter.) On March 3, 2021, J.W. had a telephone call with Schindler and the caregiver for Schindler's daughter.[2] During the call, "Schindler was upset and making threats." J.W. testified Schindler told her and the caregiver: "[I]t only took $8500 to end a life, and he had the resources. He told the [caregiver] on the phone that if [the caregiver] didn't take care of . . . his child, he would deal with him ever so severely. And he told me if I did the right thing, I have nothing to worry about." J.W. felt "[t]hreatened and unnerved" by what Schindler said. She immediately reported the incident to the police because she "felt that [she] was being threatened" and it was "scary."

Ripley, a substance abuse counselor at Veterans Village, had Schindler under her care until he was terminated from the program. A female client told Ripley "Schindler had texted her offering her drugs and a hotel room." At this point, Schindler's attorney objected to the testimony as unreliable hearsay. The court overruled the objection. Ripley looked at the text on the female client's phone and confirmed it came from Schindler's phone. There were other incidents that supported Veterans Village's decision to terminate Schindler from the program. Over defense counsel's objection, Ripley testified a resource coordinator had reported being threatened by Schindler

2     J.W. did not refer to the third person participating in the call as the caregiver for Schindler's daughter. She kept the caregiver's identity confidential and, under cross-examination, advised Schindler's attorney she could not disclose the caregiver's identity without a request for access to confidential juvenile case files pursuant to Welfare & Institutions Code section 827. However, Schindler confirmed in his testimony the other person on the call was his daughter's caregiver.

that "he was so connected that he could kill somebody and get away with it, and she felt threatened." Ripley was not present when this happened, but the resource coordinator and a program director who overheard the conversation both reported the incident to her.

Fischer, Schindler's probation officer, testified she had reviewed the terms and conditions of probation with Schindler, who confirmed he understood them. In February 2021, Tender Loving Mercy informed Fischer that Schindler had been discharged from the program because "staff claimed he tried to hit someone with a door" and "his behavior was escalating, so he was no longer in the program after that incident." In April, Veterans Village told Fischer that Schindler was discharged from their program because "he was soliciting some female residents for sex in return for drugs." In June, Schindler was ordered to enroll into another program, Crash, but he was terminated from the program the following month because of "a threat that was made to a mental health clinician." On October 10, Fischer was notified that Schindler had been arrested for domestic battery.

Defense counsel did not object to Fischer's testimony during direct examination. However, during cross examination, Fischer confirmed she had not spoken to the person allegedly threatened by Schindler at Crash or any person who was there when the threat was allegedly made. She also could not confirm if the person who reported the door-slamming incident at Tender Loving Mercy was present when it occurred. After eliciting this testimony, defense counsel promptly requested that the court strike as unreliable hearsay Fischer's direct examination testimony regarding what happened at Crash and Tender Loving Mercy. The court denied the request and allowed the testimony to stand, reasoning the hearsay nature of the evidence goes to its weight and not its admissibility.

Schindler denied he threatened anyone, that he texted a female client at Veterans Village offering drugs, or that he committed "any physical violence" against anyone at Tender Loving Mercy.

The trial court found Schindler violated condition 6a to obey all laws based on Schindler's November 2021 misdemeanor trespass conviction and that he violated condition 10a to not unlawfully use force, threats, or violence against another based on his threats against J.W. and staff members at the residential treatment programs. The court formally revoked Schindler's probation and ordered execution of the suspended seven-year prison sentence. He was awarded custody credits of 1,628 days.

DISCUSSION

I.

*Any Error in Admitting Hearsay Testimony Was Harmless*

Schindler asserts we must reverse the judgment revoking his probation and implementing the suspended seven-year sentence because the trial court prejudicially erred and violated his federal constitutional right to due process by allowing hearsay testimony from Ripley and Fischer without making the required "good cause" determination. The People concede the error but assert it was harmless because the court relied on J.W.'s testimony as the "primary basis" for finding that Schindler violated condition 10a. We conclude the People's concession is proper. On this record, we further agree with the People the error was harmless beyond a reasonable doubt.

Although we normally review a trial court's decision to admit or exclude evidence at a probation violation hearing for abuse of discretion (*People v. Shepard* (2007) 151 Cal.App.4th 1193, 1197–1198), here we apply de novo review because Schindler's claim implicates his constitutional right to due process (see *People v. Stanphill* (2009) 170 Cal.App.4th 61, 78 ["de

novo review applies where mixed questions of law and fact implicate constitutional rights"]).

Testimonial (as opposed to documentary) hearsay evidence may be admitted at a probation violation hearing consistent with due process if there is "good cause" for its admission. (*People v. Arreola* (1994) 7 Cal.4th 1144, 1159 (*Arreola*) ["requiring a showing of good cause before a defendant's right of confrontation at a probation revocation hearing can be dispensed with by the admission of a preliminary hearing transcript in lieu of live testimony"]; cf. *People v. Maki* (1985) 39 Cal.3d 707, 709–710 [documentary hearsay evidence which does not fall within an exception to the hearsay rule may be admitted if there are sufficient indicia of reliability regarding the proffered material].) "The broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Arreola*, at pp. 1159–1160.)

Here, the trial court overruled the defense's objections and allowed Ripley and Fischer to testify to hearsay statements without any finding of good cause. As the People concede, this was error and deprived Schindler of his due process right to confront and cross-examine the hearsay declarants. The People did not make a showing that any of the hearsay declarants were unavailable under Evidence Code section 240; that there would be great difficulty or expense in bringing the witnesses to the hearing; or that doing so would pose a risk of harm to the witnesses. (See *Arreola*, *supra*, 7 Cal.4th at pp. 1159–1160.) Instead, the trial court found that the hearsay statements

7

were reliable and the hearsay nature of the evidence went to its weight, not its admissibility. Reliability, however, is only one circumstance to be weighed in assessing the admissibility of hearsay evidence, and only *after* a good cause determination has been made. (See *Arreola*, at p. 1160 ["in determining the admissibility of the evidence on a case-by-case basis, the showing of good cause *that has been made* must be considered together with other circumstances relevant to the issue, . . . whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony," (italics added)].)

We assess the error for prejudice under the harmless-beyond-a-reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (*Arreola*, *supra*, 7 Cal.4th at p. 1161, citing *In re La Croix* (1974) 12 Cal.3d 146, 154.) "Due process does not require that a [probationer] benefit from such [an error], but only that no unfairness result therefrom." (*In re La Croix*, at p. 154 [holding denial of parolee's right to a timely pre-revocation hearing harmless beyond a reasonable doubt].) We conclude the record on appeal establishes the error was harmless under the *Chapman* standard.

In revoking Schindler's probation, the trial court expressly relied on J.W.'s properly admitted testimony—*independent* of any hearsay testimony from Ripley or Fischer—to find by a preponderance of the evidence that Schindler violated condition 10a by making unlawful threats to J.W. The court stated:

> "I do find . . . specifically, that [Schindler] did indeed make threats and a threat of violence to [J.W.], the Child Welfare Services worker . . . [¶] I note that the [c]ourt heard directly from [J.W.]. . . . I found her to be a credible witness and that she also reacted as if she were threatened. So this isn't a circumstance where after the fact she interpreted something which could be neutral. [¶] I note as well there was a third party on the call to whom threats were also made. . . . [¶] So I find specifically that

8

. . . Schindler was in violation of the conditions of his probation, and based on that, I find the evidence to be very persuasive in that regard."

In support of this finding, the court explained that it found J.W. to be a credible witness, and found Schindler's denial that he did not threaten J.W. to be "rehearsed" and not credible.

Only *after* finding Schindler in violation of condition 10a based on J.W.'s testimony alone did the trial court then consider Ripley's testimony. The court found Ripley's testimony regarding Schindler's threat to the resource coordinator "that he was connected" and "that he could get somebody to kill somebody and get away with it" to be reliable hearsay. It then found: "Similar with respect to the allegation that . . . Schindler unlawfully used force or threats or threats of violence on other persons, I do find that it was established by a preponderance of the evidence that he did so with respect to persons at the Veteran[s] Village." The court did not specifically discuss Fischer's testimony, nor did it consider any evidence regarding Schindler's behavior at the Crash program. The court summed up by stating: "I do agree with the People while the other circumstances that were related with respect to other residential treatment programs, including Tender Loving Mercy and -- actually, I'm just going to rely on Tender Loving Mercy -- that that demonstrates a pattern of behavior and that Mr. Schindler, when he gets upset, becomes threatening to other people or threatens violence to other people in the residential treatment context."

Thus the record is clear the trial court expressly found Schindler in violation of condition 10a based on J.W.'s testimony before any reference to the challenged hearsay testimony from the other witnesses. Here, there is also no question that J.W.'s testimony was properly admitted. J.W. testified Schindler threatened her and the caregiver—telling them that "it only took

9

$8500 to end a life, and he had the resources," that "he would deal with [the caregiver] ever so severely" if he didn't take care of his child, and that J.W. "ha[d] nothing to worry about" if she did the right thing—and that his threats scared her. Schindler's statements were properly received not for the truth of the matter asserted but to show the threats were made and they had an effect on the victim. (See *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1220 ["In order to constitute hearsay, a statement must be received as proof of the truth of the matter stated. If the statement is received as proof of something other than the truth of the statement itself, it is not hearsay."].) Perhaps for this reason, Schindler did not object to J.W.'s testimony at the probation violation hearing nor does he challenge its admissibility on appeal.[3]

As we discuss next, Schindler's statements to J.W. constituted an unlawful criminal threat and thus her testimony was substantial evidence supporting the trial court's finding that he violated condition 10a and its decision to revoke his probation. Accordingly, any error in allowing the hearsay testimony of Ripley and Fischer was harmless beyond a reasonable doubt.

---

[3] The People also point out that, even if Schindler's statements were deemed hearsay evidence, they would be admissible under the exception for statements of a party opponent. (Evid. Code, § 1220.) Although we agree with the People, we do not rely on this additional basis to reach our conclusion. The California Supreme Court is currently considering whether a hearsay statement that falls within the excited utterance exception (Evid. Code, § 1240) may be admitted at a probation and parole revocation hearing without first making a finding of good cause and determining whether a balancing of the *Arreola* factors favors admission. (See *People v. Gray* (2021) 63 Cal.App.5th 947, review granted July 14, 2021, S269237.)

## II.

*Substantial Evidence Supports the Trial Court's Finding That Schindler Violated Condition 10a and Its Decision to Revoke Probation Was Not an Abuse of Discretion*

The trial court has "very broad discretion in determining whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*).) It "may revoke and terminate the supervision of [a probationer] if the interests of justice so require and the court, in its judgment, has reason to believe . . . the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (§ 1203.2, subd. (a)(5).) Only a preponderance of the evidence must support a probation violation. (*Rodriguez*, at p. 439.)

We review the trial court's probation revocation order for an abuse of discretion (*Rodriguez, supra*, 51 Cal.3d at p. 447) and its factual findings for substantial evidence (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681). We give great deference to the trial court's decision, "bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) " 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action.' " (*Ibid*.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation' " (*Rodriguez*, at p. 443), "[a]nd the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant" (*Urke*, at p. 773). This deferential standard of review requires

11

that we view the evidence in the light most favorable to the judgment, and that we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (See *People v. Butcher* (2016) 247 Cal.App.4th 310, 318.)

Schindler asserts there is insufficient evidence to support the trial court's finding he violated condition 10a because the statements he made to J.W. were "too ambiguous to constitute a criminal threat." Rather, "they were nothing more than angry and irrational statements borne out of [Schindler's] frustration" and "[r]egardless of how violent the comments may have been, the record fails to show they qualified as true threats under section 422." We disagree.

To prove the offense of making criminal threats under section 422,[4] "[t]he prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally,

---

[4] Section 422, subdivision (a), provides, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630.)

Schindler's claim of insufficient evidence focuses on the third element; he contends his threats to J.W. "were not 'so' immediate or unequivocal, nor was there true gravity of purpose." "With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' [the California Supreme Court] explained in *People v. Bolin* [(1998)] 18 Cal.4th 297 [(*Bolin*)], that the word 'so' in section 422 meant that ' "unequivocality, unconditionality, immediacy and specificity are *not* absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances[.]" ' " (*In re George T.*, *supra*, 33 Cal.4th at p. 635, italics added.) " 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*Ibid.*) Section 422 "does not concentrate on the precise words of the threat" but "on the effect of the threat on the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1158.)

We do not find that Schindler's statements to J.W. were too ambiguous to constitute an unlawful criminal threat under section 422. "A threat is sufficiently specific where it threatens death or great bodily injury. A threat

13

is not insufficient simply because it does 'not communicate a time or precise manner of execution, section 422 does not require those details to be expressed.' " (*People v. Butler* (2000) 85 Cal.App.4th 745, 752.) Angry about the perceived mistreatment of his minor daughter, Schindler told J.W. "it only took $8500 *to end a life*, and he *had* the resources." (Italics added.) One can reasonably infer from Schindler's actual words he intended them to be taken by J.W. as a death threat. Indeed, Schindler admits in his opening brief on appeal his words were "violent."

Schindler sufficiently conveyed to J.W. " 'a gravity of purpose' " in his threat when he immediately backed up the threat to "end a life" by warning the caregiver he would deal with him "ever so severely" if the caregiver did not take care of his daughter and that J.W. would "have nothing to worry about" if she did the right thing. (See *Bolin*, *supra*, 18 Cal.4th at p. 338 ["hold[ing] that prosecution under section 422 does not require an *unconditional* threat of death or great bodily injury," (italics added)]; *People v. Brooks* (1994) 26 Cal.App.4th 142, 144, 149 ["[c]onditional threats are true threats if their context reasonably conveys to the victim that they are intended"; " ' "If you go to court and testify, I'll kill you," ' " constituted unlawful criminal threat].) Although we agree with Schindler, and the People concede, there is insufficient evidence to support the trial court's finding that Schindler made an unlawful threat to the caregiver because there was no evidence his statements placed the caregiver in fear for his or his family's safety, the threats to the caregiver are relevant to show the effect the entire conversation had on J.W.

Moreover, the context in which Schindler made the statements gives meaning to his actual words. Schindler agreed he was upset on the call; he admitted he was "upset" with "the caregiver for how they were treating [his]

daughter" because he believed his daughter had been "kicked," "abused," and was "showing up with bruises." A trier-of-fact could reasonably conclude from these circumstances that Schindler was not merely expressing frustration, that he meant what he said and was threatening to take steps that would result in the victim's death, and that the victim would understand the gravity and immediacy of the death threat. Indeed, the trial court found that "[w]hile [J.W.] didn't go into the background of the underlying [dependency] matter as to why" Schindler was upset, from "the circumstances that she was describing . . . that he was upset and making threats," the court found she credibly "reacted as if she were threatened." J.W. testified she immediately called the police to report the threat the same day because she felt threatened and was scared.

Schindler argues, however, that because J.W.'s report did not result in follow-up investigation by the police or the filing of criminal charges, his threats did not credibly indicate " 'serious, deliberate statements of purpose.' " We are not persuaded. The authorities' response to the report is irrelevant because "the gravamen of the crime of making a [criminal] threat rests upon the effect which the threat has upon the victim." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1540.)

Schindler argues this case is like *In re Ricky T.* (2001) 87 Cal.App.4th 1132, where the court held "the paucity of facts in the two police reports" did not support the juvenile court's finding that a 16-year-old student committed a section 422 violation against his teacher. (*In re Ricky T.*, at p. 1135.) There, the student returned to his classroom after using the restroom to find the classroom door locked and "pounded" on it. The teacher hit him with the door when he opened it. The student "became angry, cursed [the teacher] and threatened him, saying, 'I'm going to get you.' [The teacher] felt threatened

15

and sent [the student] to the school office." (*Ibid*.) Although he felt physically threatened by the student, the teacher said he "did not make a specific threat or further the act of aggression." (*Ibid*.) The court concluded "the remark 'I'm going to get you' is ambiguous *on its face* and no more than a vague threat of retaliation without prospect of execution." (*Id*. at p. 1138, italics added.) Further still, the court found the circumstances—that the teacher sent the student to the school office in response to the perceived threat and that the school did not call the police until the following day—failed to establish the threat was " 'so' " immediate. (*Id*. at pp. 1137–1138.) We disagree the cited case is like the one before us. Schindler's threat was not ambiguous on its face.

In sum, we conclude J.W.'s testimony was substantial evidence to support the trial court's finding that Schindler made an unlawful threat of violence against J.W. in violation of condition 10a. As a result, its decision to revoke his probation was not an abuse of discretion.

## III.

*The Trial Court's Finding of a Condition 6a Violation Shall be Stricken*

At the time of the probation violation hearing, Schindler stood convicted by a jury of trespass (§ 602, subd. (m)) arising from his October 10, 2021 arrest for domestic battery. Based on this conviction, the trial court found Schindler in violation of condition 6a to obey all laws and on that additional ground revoked his probation. On August 17, 2022, during the pendency of this appeal, the appellate division of the San Diego Superior Court reversed the trespass conviction for insufficient evidence.[5]

---

5    On September 16, 2022, Schindler filed a request for judicial notice of the opinion of the appellate division of the San Diego Superior Court in appellate division case No. CA289070, reversing the judgment of conviction

16

Schindler asserts, and the People concede, in light of this development there is now an absence of substantial evidence to support the trial court's finding he violated probation condition 6a. We agree. Accordingly, we shall vacate the trial court's finding of a violation of probation condition 6a. For the reasons we have already discussed, this change in circumstance does not disturb the trial court's finding he violated condition 10a as a separate and independent basis to revoke Schindler's probation.

---

for trespass (§ 602, subd. (m)) in the misdemeanor case No. M277620DV. We now grant the request and take judicial notice of the appellate division's opinion.

On April 19, 2022, Schindler filed a request to augment the record on appeal to include (A) the reporter's transcript of the jury trial and the clerk's transcript from the misdemeanor case No. M277620DV; (B) the reporter's transcript of the prior February 11, 2021 probation revocation hearing; (C) the probation reports related to the December 15, 2021 probation revocation hearing and the August 27, 2019 minute order related to Schindler's change of plea in the instant case. On May 13, 2022, we granted the motion to augment the record in its entirety with the exception of the reporter's transcript of the misdemeanor jury trial, which was deferred for consideration with the appeal. We now deny the request to augment the record with the reporter's transcript of the misdemeanor jury trial because it was not before the trial court at the time the appealed-from judgment was entered and it is also unnecessary to the disposition of this appeal. (See *People v. Gaston* (1978) 20 Cal.3d 476, 482 [a party seeking to augment the record on appeal must make a "showing of 'some certainty' . . . as to the *manner* in which the materials may be useful"].)

## DISPOSITION

The trial court's finding of a violation of probation condition 6a is vacated.  In all other respects, the judgment is affirmed.


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.